**UNITED STATES of America**

v.

**Tony O'Neal LLOYD, Defendant.**

**Civil Action No. 06–0342–WS.**
**Criminal No. 04–0069–WS.**

United States District Court,
S.D. Alabama,
Southern Division.

April 25, 2007.

Michael D. Anderson, Richard H. Loftin, U.S. Attorney's Office, Mobile, AL, for Plaintiff.

Fred Tiemann, Kristen Gartman Rogers, Carlos A. Williams, Federal Defender's Office, Southern District of Alabama, Mobile, AL, for Defendant.

## ORDER

STEELE, District Judge.

This matter is before the Court on petitioner Tony O'Neal Lloyd's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 39). The Motion has been briefed and is ripe for disposition at this time.

## I. Background.

On April 20, 2004, a grand jury convened in the Southern District of Alabama handed down a two-count Indictment (doc. 1) charging Lloyd with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and with possession of a firearm with a removed, obliterated or altered serial number, in violation of 18 U.S.C. § 922(k).

On August 26, 2004, Lloyd filed an Amended Plea Document (doc. 14) providing notice of his intent to plead guilty to

the § 922(g)(1) offense charged in Count 1 of the Indictment, and admitting to a factual resume as follows: "That on or about December 6, 2002, in the Southern District of Alabama he possessed, in and affecting commerce, a firearm, namely an Intratec, Model AB–10, 9mm pistol. He admits further that he had previously been convicted of a felony offense." (Doc. 14, at 2.) The Amended Plea Document was signed by both Lloyd and his counsel of record. On that same date, Lloyd formally entered a plea of guilty to Count 1.[1]

During the plea colloquy, Lloyd expressed satisfaction with the representation provided by his appointed counsel, and further acknowledged that by pleading guilty he was facing a sentence of imprisonment of up to 10 years. (Doc. 34, at 4–5.) Lloyd also indicated his understanding that the guideline sentence range could not be determined at that time, that the sentence imposed might differ from any estimate that his counsel may have given him, that "nobody knows what sentence is going to be imposed at this time," and that the sentence may differ from what Lloyd might have thought it would be. (*Id.* at 6–7.) With regard to the Amended Plea Document, Lloyd testified that he had signed it, that he understood and agreed with it, and that the factual resume portion of the document was true. (*Id.* at 10–11.)

Lloyd pleaded guilty to Count 1 and stated on the record that he was doing so of his own free will because he was guilty. (*Id.* at 11.)

Following the guilty plea, the United States Probation Office prepared a Presentence Investigation Report (doc. 23) that brought to light disturbing details concerning the offense conduct. In particular, the PSR documented that on the morning of December 6, 2002, Mobile Police Department officers were dispatched to a residence where they found Lloyd pointing a firearm at his ex-girlfriend, Crystal F. Tucker, in an apparent hostage situation. After establishing a perimeter, the police were able to negotiate a peaceful conclusion to the standoff, culminating in Lloyd releasing Tucker and, several minutes later, surrendering. Following the incident, Tucker informed authorities that Lloyd had beaten her, displayed a handgun, threatened to kill her, and refused to allow her to leave the residence.[2]

In light of these facts, the PSR recommended a base offense level of 34, using a cross-reference to U.S.S.G. § 2A4.1, which sets a base offense level of 32 for offenses of kidnapping, abduction or unlawful restraint, with a 2–level enhancement for the use of a dangerous weapon.[3] After a three-level reduction for acceptance of re-

---

1. In pleading guilty in this fashion, Lloyd did not enter into a formal plea agreement with the Government, but rather made a "blind plea" to that offense.

2. In addition to federal firearms charges, Lloyd faced state charges of domestic violence/harassment and unlawful imprisonment arising from the December 6, 2002 incident. He was convicted of both charges on January 22, 2003 in Mobile Municipal Court.

3. The PSR reached this recommendation by cross-referencing the guideline for the § 922(g)(1) offense of conviction (U.S.S.G. § 2K2.1) with U.S.S.G. § 2X1.1, which provides that the base offense level is the base

offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty. The guideline for the substantive offense was determined to be § 2A4.1 (kidnapping, abduction, unlawful restraint). Such cross-referencing is expressly provided for in U.S.S.G. § 2K2.1(c)(1)(A), which reflects that if the defendant used or possessed a firearm in connection with the commission or the attempted commission of another offense, then § 2X1.1 applies in respect to that other offense if the resulting offense level exceeds that which would be calculated under § 2K2.1, which it did in this case.

sponsibility, Lloyd's adjusted offense level was calculated in the PSR to be 31. In light of Lloyd's criminal history category of IV, the PSR proposed a guidelines range of 151 to 188 months, subject to a statutory cap of 120 months for the § 922(g)(1) conviction.

Prior to the sentencing hearing, Lloyd's counsel filed his Position with Respect to Sentencing Factors (doc. 19), including specific objections to the factual allegations concerning the restraint of Tucker and any sentence enhancements arising from same. With regard to the calculated base offense level, Lloyd's counsel objected that "[t]he offense levels in said paragraphs are premised upon ... allegations (kidnaping, abduction, unlawful restraint) which Lloyd has not admitted and which were not found by a jury," such that counsel contended that the sentencing enhancements ran afoul of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). (Doc. 19, at 1–2.)

At the sentencing hearing conducted on February 25, 2005, the Government presented the testimony of both Tucker and Officer Terence Jones of the Mobile Police Department in relation to the offense conduct. Officer Jones testified that he had responded to the December 6, 2002 call about a possible hostage situation, that upon arrival at the house a male voice had screamed at him to back off or he would shoot, that a perimeter was established and other units arrived on the scene, that the police negotiated with Lloyd for some time, that Lloyd eventually released Tucker from the house and came out himself five or ten minutes later, and that an

ensuing search of the house revealed a gun stuffed inside some cushions. (Doc. 35, at 5–7.)[4] After the incident, Officer Jones testified, Tucker told him that Lloyd had choked her, punched her, pulled a gun and threatened to kill her. (*Id.* at 8.) Tucker testified in similar fashion. (*Id.* at 13–15.) Tucker specifically testified that she did not feel free to leave the house during this incident, and that she felt that Lloyd would have stopped her (using the firearm or otherwise) had she attempted to do so. (*Id.* at 16.)

Also at the sentencing hearing, defense counsel argued that to enhance Lloyd's sentence based on the cross-reference would violate due process, "sort of an *ex post facto* argument," because at the time of the offense it would have been unlawful for Lloyd's sentence to be enhanced based on facts neither found by a jury nor admitted by the defendant. (*Id.* at 21–22.)[5] Defense counsel argued that the cross-reference should be rejected, leaving a total offense level of 22, which produced a sentencing guidelines range of 63 to 78 months. (*Id.*) However, the Court found that principles of due process or *ex post facto* violation were not implicated by the weighing of Lloyd's relevant conduct in computing and applying the advisory guidelines range. (*Id.* at 23–24.) On that basis, and emphasizing that the Sentencing Guidelines were being treated as advisory, the undersigned found that the proper guidelines range was 151 to 188 months, and sentenced Lloyd to a term of imprisonment of 120 months, the statutory maxi-

---

**4.** The gun was not loaded when found, but a loaded clip was discovered stuffed between the mattresses of Tucker's son's bed sometime later. (*Id.* at 17.)

**5.** This argument was a necessary shift in tactics for defense counsel relative to that set forth in the Position on Sentencing Factors.

In the interim, the Supreme Court had decided *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which required modification of the rationale for defense counsel's previous contention that Lloyd could not be sentenced based on facts that had neither been proven to a jury nor admitted by him.

mum for the § 922(g)(1) offense of conviction. (*Id.* at 25.) [6]

On direct appeal, Lloyd asserted that due process and *ex post facto* considerations precluded imposition of *Booker's* advisory guidelines scheme retroactively to impose more severe sentences than would be permissible under the mandatory guidelines in effect when the offense was committed. In a very short opinion entered on October 14, 2005, the Eleventh Circuit affirmed Lloyd's conviction and sentence on the grounds that binding Circuit precedent foreclosed the precise argument on which the appeal was predicated. (Doc. 38.) [7]

On May 30, 2006, Lloyd filed his § 2255 petition, asserting the following grounds for relief: (1) ineffective assistance of counsel in that counsel "failed to object to misapplication of the guidelines since unlawful imprisonment is a misdemeanor and the lessor included offense of unlawful restraint"; and (2) Lloyd's sentence should be "corrected" or "reconsidered" based on Lloyd's post-conviction rehabilitation. (Doc. 1, at 5–6.)

## II. Habeas Standard.

Habeas relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." 456 U.S. at 164, 102 S.Ct. 1584. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805

(1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack.... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." *Moore v. United States,* 598 F.2d 439, 441 (5th Cir.1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim raised. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States,* 152 F.3d 1329, 1331 (11th Cir.1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." *Cross v. United States,* 893 F.2d 1287, 1289 (11th Cir.1990). Jurisdictional issues are not subject to procedural default because federal courts have limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking. *Harris v. United States,* 149 F.3d 1304, 1307 (11th Cir.1998).

---

6. On motion of the Government, the Court dismissed Count 2 of the Indictment, which charged Lloyd with possession of a firearm with an obliterated serial number. (*Id.* at 27.)

7. In particular, the appellate court relied on *United States v. Duncan,* 400 F.3d 1297 (11th

Cir.2005), which rejected the notion that *Booker's* advisory guidelines remedy, if applied retroactively, would operate as an *ex post facto* law in violation of defendants' due process rights. 400 F.3d at 1307–08.

■ One way a petitioner may overcome a procedural default is by demonstrating that the default was attributable to constitutionally ineffective performance by trial or appellate counsel. *Cross*, 893 F.2d at 1290. To establish ineffective assistance of counsel:

> "... a petitioner must show that counsel's performance was deficient and that he was prejudiced by that deficiency. A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."

*Hagins v. United States*, 267 F.3d 1202, 1204–05 (11th Cir.2001) (internal citations omitted); *see also Cross*, 893 F.2d at 1290. Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." Cross, 893 F.2d at 1290.[8] Meanwhile, prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." *Id.*[9]

■ "Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir.1992) (citation omitted). Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate.... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994) (internal quotations and citations omitted); *see also Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir.2001) ("There is a strong presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy.").

### III. Analysis.

### A. Ineffective Assistance of Counsel.

The first ground for § 2255 relief identified in Lloyd's § 2255 petition is that he received ineffective assistance of counsel because his appointed counsel failed to object that Lloyd was actually innocent of "kidnapping, abduction and unlawful restraint," the substantive offense set forth

---

**8.** Petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms." *Gallo–Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir.2000).

**9.** A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Gallo–Chamorro*, 233 F.3d at 1303–04. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross*, 893 F.2d at 1292 (citation omitted).

in U.S.S.G. § 2A4.1 that was cross-referenced for sentencing purposes.

To be clear, Lloyd's counsel did object vigorously to the application of § 2A4.1 in this case, both in defendant's Position with Respect to Sentencing Factors (doc. 19) and during the sentencing hearing itself. In particular, counsel asserted that allegations that Lloyd had restrained and intimidated Tucker could not lawfully be used to enhance Lloyd's sentence because such allegations had neither been admitted by Lloyd nor proven to a jury, and the offense conduct had predated *Booker.* Thus, Lloyd's claim in these § 2255 proceedings is not (and could not be) that his lawyer failed to object to the application of § 2A4.1 to his sentence, but is rather that his lawyer failed to raise the specific objection that Lloyd believes should have been raised.

 Lloyd ascribes constitutionally deficient performance to his attorney for failing to argue that Lloyd "did not commit the cross referenced conduct of kidnapping, abduction or unlawful restraint which has enhanced his current sentence." (Petitioner's Brief (doc. 40), at 5.) To meet his "heavy" burden of proving that his counsel's performance was ineffective in this respect, Lloyd "must establish that no competent counsel would have taken the action that his counsel did take." *Callahan v. Campbell,* 427 F.3d 897, 933 (11th Cir.2005) (citation omitted). "There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy." *Michael v. Crosby,* 430 F.3d 1310, 1320

(11th Cir.2005). Furthermore, "counsel will not be deemed unconstitutionally deficient because of tactical decisions." *Id.* at 1320. And of course, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel. *Bolender v. Singletary,* 16 F.3d 1547, 1573 (11th Cir.1994); *see also Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir.1984) (counsel is not ineffective for failing to raise issues "reasonably considered to be without merit").

 In the opinion of the undersigned, counsel's failure to argue at the sentencing hearing that Lloyd's conduct on December 6, 2002 was not sufficient to trigger the cross-referenced guideline for kidnapping, abduction or unlawful restraint was not objectively unreasonable and does not fall beyond the wide range of competence for criminal defense attorneys. Had it been made, such an argument would have been futile. The Court heard substantial unrebutted testimony at the sentencing hearing, from both law enforcement and the victim, that Lloyd had held the victim at gunpoint inside the residence, beaten her, threatened to kill her, caused her to feel that she was not free to leave, and released her only after negotiations with police officers who had established a perimeter outside the home. This course of conduct falls well within any reasonable definition of the term "unlawful restraint" as used in the applicable guideline. *See United States v. Gray,* 16 F.3d 681, 684 (6th Cir.1994) (construing term "unlawful restraint" in § 2A4.1 "to be a residual term designed to cover all forms of physical or forcible restraint of a victim").[10] Any argument that Lloyd's

---

**10.** To be sure, Lloyd now offers a substantially different version of the facts in the Affidavit (doc. 41) that accompanies his § 2255 petition. But this evidence was never presented at the sentencing hearing and therefore could not have formed the basis for an argument by defense counsel that the requisites of § 2A4.1 were not satisfied here. Even if such testimo-

ny had been presented at sentencing, it would have been highly unlikely to overcome the credible testimony that the undersigned heard from Tucker and Officer Jones. As such, it was not constitutionally deficient performance either for Lloyd's counsel to make the strategic decision not to put Lloyd on the

counsel might have raised to the contrary would have been almost certain to fail, and the undersigned cannot ascribe constitutionally deficient performance to counsel's failure to raise a nonmeritorious issue.

Nor can Lloyd satisfy the prejudice prong of the *Strickland* standard, inasmuch as the Court heard the evidence at sentencing and found based on that evidence that defendant's conduct constituted unlawful restraint within the meaning of § 2A4.1. The Court is unaware of any valid legal argument that Lloyd's counsel might

stand to testify about the events of December 6, 2002 (which petitioner has not argued in any event) or for Lloyd's counsel not to argue based on the evidence in the record at sentencing that Lloyd's activities fell short of "unlawful restraint."

11. In his filings, Lloyd implies at different times that his ineffective assistance claim is actually of a different nature than that enumerated in his petition. It is unclear whether Lloyd seeks to predicate requests for § 2255 relief on these permutations, which are essentially perfunctory afterthoughts given scant mention in his submissions. Even if they were separate grounds for relief, none are persuasive. For example, Lloyd argues that his counsel was ineffective in failing to argue that his rights were violated because the enhancements he received were based on facts not charged in the indictment. But this is a variant of the *Booker/Blakely* arguments that counsel did unsuccessfully raise. Besides, this Circuit's jurisprudence is crystal clear that, in an advisory guidelines scheme, application of sentencing enhancements that were not charged in the indictment is entirely proper. *See, e.g., United States v. Thomas,* 446 F.3d 1348, 1355 (11th Cir.2006) (rejecting defendant's claim that he had a Fifth Amendment right to have all facts used to enhance his guidelines range found by a grand jury and charged in his indictment). As already stated, it is not ineffective assistance for counsel not to raise nonmeritorious arguments. Next, Lloyd faults his attorney for failing "to do even the most basic research on the events which led to petitioner's judgment and enhanced sentence." (Petitioner's Brief, at 7.)

have made that would have been reasonably probable to elicit a different result. The evidence was clear, credible and unambiguous that Tucker was physically assaulted, threatened with a firearm, caused to feel that she could not leave the residence, and not permitted to leave until after negotiations with the police had occurred. Nothing more was required to constitute "unlawful restraint" for purposes of the cross-referenced guideline; to the contrary, these facts describe the very essence of an unlawful restraint, which is undoubtedly why Lloyd's counsel did not attempt to suggest otherwise.[11]

Even if this rose to the level of deficient performance, Lloyd cannot show prejudice because he has identified no facts that counsel might have discovered upon investigation that might have been sufficient to overcome the extensive testimony at the sentencing hearing that Lloyd had in fact unlawfully restrained Tucker with a firearm. Lloyd also faults his lawyer for not arranging polygraph examinations for Lloyd and Tucker. (Lloyd Aff., at 3.) This cannot be constitutionally defective performance because polygraphs are generally not admissible evidence in federal court. *See generally United States v. Henderson,* 409 F.3d 1293, 1302–03 (11th Cir.2005) (district court did not abuse discretion in excluding polygraph evidence under *Daubert* and Rule 702, Fed.R.Evid.). Finally, Lloyd criticizes his counsel's legal advice that the circumstances involving Tucker would not affect his sentence. (Lloyd Aff., at 3.) Assuming that such advice was given, this was a reasonable understanding of the law at the time of Lloyd's guilty plea, and defense counsel made reasonable arguments before and during the sentencing in furtherance of that position. That counsel's position was not successful, and that such legal advice ultimately proved incorrect based on intervening Supreme Court developments, does not constitute constitutionally defective performance in these specific circumstances. *See Smith v. Singletary,* 170 F.3d 1051, 1054 (11th Cir.1999) ("The giving of legal advice that later is proven to be incorrect ... does not necessarily fall below the objective standard of reasonableness.").

### B. Post–Conviction Rehabilitation.

As his second ground for § 2255 relief, Lloyd requests that this Court utilize its "broad discretion in rendering a fair and just punishment" to modify his sentence based on post-sentencing rehabilitation. (Doc. 1, at 5.) In support of this claim, Lloyd shows that, while in prison, he has successfully completed and received certificates for multiple Adult Continuing Education Courses and other programs, including introduction to real estate, relapse prevention, stress relaxation autogenics, and graduation from a 100–hour program in vocational trades culinary arts exploration.

 These achievements are laudable, and Lloyd is to be commended for devoting his time in prison to productive ends. If the Court were sentencing Lloyd now for the first time, or if there were other valid grounds for resentencing him at this time, his rehabilitative efforts would undoubtedly be weighed in the sentencing calculus among the other factors outlined in 18 U.S.C. § 3553(a). *See generally United States v. Stuart*, 384 F.3d 1243, 1247–48 (11th Cir.2004) (indicating that in certain circumstances postoffense rehabilitation may justify downward departure at sentencing); 18 U.S.C. § 3553(a)(1) (identifying the "history and characteristics of the defendant" as factors considered in determining the particular sentence to impose). Unfortunately for Lloyd, however, he has already been sentenced and there are no grounds that might justify a resentencing here. A § 2255 petitioner cannot obtain a new sentencing hearing each time his history and characteristics change in some way; otherwise, federal courts would be bombarded by resentencings, forever ratcheting sentences up or down on an almost daily basis depending on whatever changes there might have been in any of the § 3553(a) factors in the interim. Such a result would obviously be unworkable and absurd.

Aside from these practical difficulties, 28 U.S.C. § 2255 is far too narrow in scope to furnish Lloyd with a vehicle for resentencing on this basis. Indeed, "[c]ourts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal" and that relief under that section is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir.2004) (citations omitted); *see also Graziano v. United States*, 83 F.3d 587, 589–90 (2nd Cir.1996) ("collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice") (citation omitted). With respect to this ground for relief, Lloyd does not contend that his sentence was infected with error of either constitutional or nonconstitutional dimensions but instead asks that he be resentenced so that the Court may take into account rehabilitative endeavors that postdate his original sentencing. This request falls outside the permissible parameters of § 2255 relief and therefore is not cognizable, as a matter of law.[12]

---

**12.** Myriad courts have so held, and the undersigned is unaware of a single authority to the contrary. *See, e.g., United States v. Murphy*, 229 F.3d 1145, 2000 WL 1144603, *1 (4th Cir.2000) (finding that § 2255 petitioner was not entitled to relief based on post-conviction rehabilitation because a district court lacks authority to modify a sentence on this basis); *United States v. Bundy*, 198 F.3d 247, 1999 WL 1045167, *1 (6th Cir.1999) (affirming denial of relief under § 2255 and other sections for post-conviction rehabilitation, and reasoning that "[a]lthough we commend Bundy for

■ Nor would Lloyd be entitled to relief even if his *pro se* filing were liberally construed as a motion for sentence reduction under 18 U.S.C. § 3582(c), which provides that courts may not modify terms of imprisonment once imposed except in extremely limited circumstances. *See* § 3582(c) (explaining that "court may not modify a term of imprisonment once it has been imposed" except in certain enumerated circumstances); *Quesada Mosquera v. United States*, 243 F.3d 685, 686 (2nd Cir.2001) (general rule is that court may not modify a term of imprisonment once it has been imposed); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization."). Post-sentencing rehabilitation is not among the enumerated grounds in that statute, and therefore cannot justify a reduction in sentence.[13] Thus, even if Lloyd's § 2255 claim predicated on post-sentencing rehabilitation were recharacterized as a § 3582(c) request, he would remain ineligible for modification or reduction of his sentence, or for other relief, on that basis.

## IV. Conclusion.

For all of the foregoing reasons, petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (doc. 39) is **denied.**[14] A separate judgment will enter.

---

his rehabilitative efforts and accomplishments since his conviction, unfortunately, none of these provisions permits the sentencing court to reopen Bundy's sentencing for the relief he seeks"); *United States v. Bustos*, 2007 WL 471133, *1 (S.D.Tex. Feb. 8, 2007) (§ 2255 motion requesting reduction in sentence for post-conviction rehabilitation does not assert any cognizable ground for relief); *United States v. Dicks*, 2006 WL 1438524, *1 (D.Conn. May 23, 2006) ("Post-conviction rehabilitation, however, does not provide an independent basis for relief under 28 U.S.C. § 2255."); *United States v. Zuniga*, 2005 WL 3542553, *2 (N.D.Ill. Dec. 22, 2005) (explaining that while district court applauds defendant's completion of numerous classes in prison, "Section 2255 simply does not provide the Court the opportunity to revisit his sentence"); *United States v. Edmond*, 2005 WL 1704912, *5 (W.D.La. July 20, 2005) ("In the absence of some other basis for resentencing, this court cannot consider post-sentencing rehabilitation, standing alone, as a basis for relief under section 2255."); *United States v. Goode*, 2004 WL 2755518, *2 (E.D.Pa. Nov. 30, 2004) (explaining that while defendant has begun rehabilitation in prison, that is insufficient grounds for § 2255 relief); *United States v. Chen*, 2000 WL 1831540, *2 (N.D.Ill. Dec. 11, 2000) (opining that § 2255 provides no means for district court to effect downward departure of sentence for even extraor-

dinary post-conviction rehabilitation); *Cruz v. United States*, 2000 WL 1510079, *10 (S.D.N.Y. Oct. 10, 2000) ("Post-conviction rehabilitation does not provide an independent basis for relief under 28 U.S.C. § 2255."); *United States v. Dugan*, 57 F.Supp.2d 1207, 1209 (D.Kan.1999) ("federal courts have uniformly held that a § 2255 movant's post-sentencing rehabilitation, standing alone, is not a valid basis for reducing a defendant's sentence").

**13.** *See, e.g., United States v. Rodriguez–Pena*, 470 F.3d 431, 433 (1st Cir.2006) (defendant's extensive post-judgment rehabilitation provides no basis for sentencing reduction in its own right or for further downward departure where a § 3582(c) reduction is ordered for some other reason); *Bustos*, 2007 WL 471133, at *2 (section 3582(c) does not allow modification of sentence where defendant represents to court that he is ready to change and be a new person); *Guerrero v. United States*, 151 F.Supp.2d 446, 449 (S.D.N.Y. 2001) ("Under § 3582(c), however, post-sentence rehabilitation is not by itself a ground for modifying a sentence that has been lawfully imposed.") (citation omitted).

**14.** The law is clear that "[a] district court may deny relief under 28 U.S.C. § 2255 without an evidentiary hearing if the motion and the files and records of the case conclusively

show that the prisoner is entitled to no relief." *Long v. United States,* 883 F.2d 966, 968 (11th Cir.1989) (citations omitted). As the file in this case conclusively establishes that Lloyd is not entitled to relief under § 2255, his petition is denied without a hearing.