Joaquin Osvaldo GALLO-CHAMORRO, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 98-4507.

United States Court of Appeals,

Eleventh Circuit.

Nov. 21, 2000.

Appeal from the United States District Court for the Southern District of Florida.(No. 96-02751-CV-JCP), James C. Paine, Judge.

Before TJOFLAT, HILL and POLITZ*, Circuit Judges.

POLITZ, Circuit Judge:

Joaquin Osvaldo Gallo-Chamorro appeals the denial of his 28 U.S.C. § 2255 petition to vacate his conviction and sentence, raising two issues:  (1) he received ineffective assistance of counsel, and (2) the district court erred in giving a *Pinkerton* instruction to the jury.  Agreeing with the district court's ruling on both issues we affirm.

BACKGROUND

Gallo was arrested in Bogota, Colombia on January 9, 1990.  The United States made a request for his provisional arrest on January 11, 1990, submitting Diplomatic Note 206 to Colombia on March 9, 1990. The Note requested Gallo's extradition on two indictments.[1]  Colombia complied with the request by issuing Resolution No. 150 on July 3, 1990.  Gallo appealed the extradition proceedings and Colombia issued Resolution No. 235 on September 5, 1990, granting Gallo's extradition for some of the counts alleged in the two indictments, specifically importation of cocaine, distribution of cocaine, and conspiracy to distribute cocaine.  Resolution 235 also contained the following declaration:

---

*Honorable Henry A. Politz, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

[1]The United States and Colombia entered into an extradition treaty on September 14, 1979. Colombia ratified the treaty by its Law 27 of 1980;  the United States ratified the treaty on November 20, 1981.  In 1986, the Colombian Supreme Court held that Law 27 was unconstitutional because it had been sanctioned by a Colombian government official other than the President of Colombia.  Because of this ruling, the treaty lacks force in Colombia.  In 1989, the President of Colombia, under his martial law powers, issued Decree Number 1860 which provides in pertinent part that "for the purpose of extradition of Colombian and foreign nationals sought for [narcotics trafficking and related] offenses, the procedure set forth in the Code of Criminal Procedure shall be applied, with the modifications set forth herein."  The issuance of this decree suspended Colombia's requirement that Colombian nationals be extradited only under treaties.

The [Colombian] Supreme Court of Justice has stated, on several occasions, that the violation of Title 18, Section 2, of the United States Code does not have an equivalent in Colombia, so therefore the extradition shall not be authorized, either, on account of this definition.

Prior to trial, Gallo filed a Motion to Enforce Rule of Specialty, contending that the government could only prosecute him for the offenses authorized by the extradition and could not proceed on any charges based on aid and abet liability under 18 U.S.C. § 2.[2] The district court granted Gallo's motion, rejecting the government's position that § 2 does not create a separate substantive offense. After this ruling, the government redacted Gallo's indictment to charge only the counts authorized by Resolution 235.

At trial, the government requested a *Pinkerton* instruction on the importation count.[3] The court gave the instruction over Gallo's objection. After a question from the jury about the coverage of the *Pinkerton* charge, the court gave a supplemental instruction, again over Gallo's objection, that the *Pinkerton* charge applied to the three distribution counts as well as the importation charge. The jury convicted Gallo on the three substantive distribution counts and the importation count, but found him not guilty of conspiracy to distribute cocaine. Gallo unsuccessfully moved for a new trial based on the *Pinkerton* charge, asserting that it violated the rule of specialty because it was a theory of "constructive liability" akin to aid and abet liability.

At sentencing, Gallo informed the court of a diplomatic note sent by the Colombian government to the State Department objecting to the *Pinkerton* charge in his trial. Gallo could not produce the note, however, and the court overruled the objection. Gallo eventually filed the diplomatic note.[4]

---

[2]Section 2 of Title 18 of the United States Code reads as follows:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

[3]*Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

[4]Diplomatic Note E-1518 from the Colombian Government, dated October 1, 1991, advised the United States Department of State that it had received information that:

> [T]he trial judge, the Honorable James C. Paine, pursuant to the prosecution's request instructed the jury that it could find Mr. Gallo Chamorro guilty of the substantive offenses charged in the indictment under the "Pinkerton" theory of criminal liability. The Pinkerton theory, which is wholly vicarious in nature is not recognized by Colombia since, like U.S.C. Section 2, it has no comparable legal concept in the Colombian Criminal Code.

> By instructing the jury that it could find Mr. Gallo Chamorro guilty of the substantive crime charged under a theory of vicarious criminal liability, not recognized

We affirmed Gallo's conviction and sentence, finding no violation of the specialty doctrine because the jury convicted Gallo of the substantive counts authorized by Colombia's extradition resolution.[5]  In so holding, we noted the distinction between *Pinkerton* liability and aid and abet liability under 18 U.S.C. § 2.  We also found that Gallo had waived any dual criminality argument by not raising same in the district court, leaving the record unclear with respect to Colombia's reasons for extradition.  Finally, we ruled that Diplomatic Note E-1518 had no persuasive or precedential value in this case.[6]

Gallo invokes 28 U.S.C. § 2255 to vacate his conviction and sentence, claiming ineffective assistance of counsel and that the district court erred in giving the *Pinkerton* instruction.  The magistrate judge held an evidentiary hearing and requested the presentation of evidence.  Gallo offered Diplomatic Note E-1518.  The government presented an expert witness on comparative law who testified that Gallo's conduct was criminal under Colombia law even though he never physically transported the cocaine.

The magistrate judge filed a Report and Recommendation concluding that Gallo lacked standing to assert dual criminality because that doctrine only gives surrendering states the ability to refuse extradition on grounds that the prisoner's conduct is not criminal in its jurisdiction.  Both parties filed objections.  Gallo disputed the finding and the United States requested two additional alternative findings: (1) assuming Gallo's standing to raise dual-criminality, the *Pinkerton* instruction did not violate the doctrine because Gallo's acts constituted a crime in Colombia, and (2) assuming both standing and a violation, Gallo's convictions and sentences on the three distribution counts should be upheld because sufficient evidence existed to convict on those counts without the instruction.  The government also objected to the magistrate judge's failure to rule on Gallo's new specialty argument and to bar Gallo from relitigating that issue.  The district court adopted the magistrate judge's submission, incorporating the alternative holdings requested by the United States.  This appeal followed.

ANALYSIS

---

by Colombia, the trial judge violated the extradition Resolution, and other principles of international law....

The terms under which Mr. Gallo Chamorro's extradition was granted have not been complied with [sic] the Embassy requests that the appropriate actions be taken to reinstate his rights and comply with the terms of the extradition.

[5]*United States v. Gallo-Chamorro,* 48 F.3d 502 (11th Cir.1995).

[6]*Id.* at 507.

*I.      Ineffective Assistance of Counsel*

In order to establish an ineffective assistance claim, a defendant must prove both deficient performance on the part of counsel and prejudice as a result.[7]  Specifically, proof is required "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[8]  Defendant must prove deficient performance by a preponderance of competent evidence,[9] and the standard is "reasonableness under prevailing professional norms."[10]  With regard to the prejudice prong of *Strickland,* "a reasonable probability is a probability sufficient to undermine confidence in the outcome."[11]

Applying *Strickland* teachings, we find Gallo's contentions insufficient to establish ineffective assistance of counsel.  He first claims that counsel was deficient for failing to object to the *Pinkerton* instruction on dual criminality grounds.  While we find no case law from this circuit directly establishing standing to assert a dual criminality challenge, the mere absence of authority does not automatically insulate counsel's failure to object on that basis.  Other circuits have addressed dual criminality charges on the merits, reflecting that an objection on such grounds was not wholly without precedent.[12]

Here, however, counsel's failure to object based on dual criminality does not constitute deficient performance.  Counsel's decision to focus on specialty constitutes the type of strategic trial decision that falls

---

[7]*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);  *Nixon v. Newsome,* 888 F.2d 112, 115 (11th Cir.1989).

[8]*Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986);  *see also Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000) (most recent decision reaffirming *Strickland* analysis).

[9]*Strickland,* 104 S.Ct. at 2064.

[10]*Williams,* 120 S.Ct. at 1511.

[11]*Strickland,* 466 U.S. at 694, 104 S.Ct. 2052;  *Nixon,* 888 F.2d at 115.

[12]*See United States v. Saccoccia,* 58 F.3d 754 (1st Cir.1995) (finding no dual criminality violation when predicate acts to a RICO charge where not independently extraditable);  *United States v. Khan,* 993 F.2d 1368 (9th Cir.1993) (specifically finding that defendant had standing to raise a dual criminality challenge and holding that Count VIII of defendant's conviction violated that doctrine);  *United States v. Levy,* 905 F.2d 326 (10th Cir.1990) (ruling on merits of defendant's dual criminality challenge without discussion of standing);  *United States v. Merit,* 962 F.2d 917 (9th Cir.1992) (same).

outside the purview of deficient performance.[13] Counsel may well have thought specialty the stronger argument, especially because the aforementioned case law dealt with additional counts or separate factual allegations, not jury instructions on different theories of liability.

We likewise reject Gallo's assertion, as a basis for deficient performance, that counsel focused his specialty argument on *Pinkerton* 's similarity to aid and abet liability, rather than Colombia's specific prohibition of prosecution for conspiracy to import. While it is accurate to state that Colombia specifically barred prosecution for conspiracy to import,[14] we find that counsel's failure to object on this basis falls within the broad range of strategic options available. The Resolution prevents conviction on multiple conspiracies, but says nothing about liability for crimes resulting from the one overall conspiracy for which Colombia found sufficient acts by Gallo. Counsel's failure to attack the instruction based on conspiracy rather than § 2 falls significantly short of deficient performance. Finding that Gallo has failed to establish deficient performance, we do not address the issue of prejudice.

## II.     The Pinkerton Instruction

We next consider whether the district court erred in giving a *Pinkerton* instruction on the substantive importation count and the three distribution counts. Gallo contends that the court erred because the instruction violated his extradition agreement. We review such an extradition challenge *de novo.*[15]

In *United States v. Pinkerton,* the Supreme Court held that a co-conspirator could be guilty of a substantive offense even though he did no more than join the conspiracy, provided that the offense was reasonably foreseeable and was committed in furtherance of the conspiracy.[16] Instructing juries on this concept has come to be known as a *Pinkerton* instruction. Gallo asserts that by giving this instruction, the district court violated both the specialty doctrine and the dual criminality doctrine.

### A. The Specialty Doctrine

The specialty doctrine "stands for the proposition that the requesting state, which secures the

---

[13]Counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

[14]*See* Resolution Number 235.

[15]*United States v. Puentes,* 50 F.3d 1567 (11th Cir.1995).

[16]328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *see also Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

surrender of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave the prosecuting state to which he or she had been surrendered."[17]  As noted by various courts of appeals, "specialty is a doctrine based on international comity.  Because the surrender of the defendant requires the cooperation of the surrendering state, preservation of the institution of extradition requires that the petitioning state live up to whatever promises it made in order to obtain extradition."[18]

Gallo asserts that the *Pinkerton* instruction violated the doctrine of specialty because the Colombian government failed to authorize a *Pinkerton* charge in Resolution 235.  Gallo also points to Diplomatic Note E-1518, expressly stating that Colombian courts do not recognize *Pinkerton* because it is "vicarious" in nature.

Our ruling in Gallo's direct appeal is controlling herein.  Gallo was prosecuted only for the crimes for which Colombia granted extradition;  there was no specialty violation.[19]  Rather than mandating exact uniformity between the charges set forth in the extradition request and the actual indictment, "[w]hat the doctrine of specialty requires is that the prosecution be 'based on the same facts as those set forth in the request for extradition.' "[20]  The district court tried Gallo on the facts included in the request for extradition,[21]

---

[17]*United States v. Herbage,* 850 F.2d 1463, 1465 (11th Cir.1988) (quoting 1 M. CHERIF BASSIOUNI, INTERNATIONAL EXTRADITION:  UNITED STATES LAW AND PRACTICE 359-60 (2d ed.1987));  *see also United States v. Gallo-Chamorro,* 48 F.3d 502, 504 (11th Cir.1995).

[18]*United States v. Najohn,* 785 F.2d 1420, 1422 (9th Cir.1986);  *see also United States v. Rauscher,* 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886) (recognizing specialty doctrine for the first time).

[19]*Gallo-Chamorro,* 48 F.3d at 506-07.

[20]*United States v. Sensi,* 879 F.2d 888, 895-96 (D.C.Cir.1989) (quoting RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 477, cmt. a (1987)).

We are mindful that some courts and other authorities state the test as "whether the requested state has objected or would object to prosecution."  RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 477 cmt. b (1987).  *See also United States v. Andonian,* 29 F.3d 1432 (9th Cir.1994) (stating that the "test for this case is 'whether the extraditing country would consider the acts for which the defendant was prosecuted as independent from those for which he was extradited.' ") (citing *United States v. Cuevas,* 847 F.2d 1417, 1428 (9th Cir.1988) (internal citations omitted)).  While this language seems to lend importance to the view of the rendering country, the main focus remains on the prosecution and the conduct of the defendant.  In this case Colombia authorized the prosecution, based on Gallo's conduct, with respect to the charges upon which the district court convicted Gallo.  We find no case law reversing a conviction because a rendering country objected after trial to a jury instruction or evidentiary issue.  As we stated on direct appeal, the specialty and dual criminality doctrines cannot be "construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state."  *Gallo-Chamorro,* 48 F.3d at 508 (citing *United States v. Archbold-*

and gave jury instructions in accordance therewith.

Gallo changes his position in this petition, now asserting that the instruction violated the specialty doctrine not because of its similarity to 18 U.S.C. § 2, but because Colombia specifically prohibited prosecution for conspiracy to import. This brings his contention squarely under the reasoning in *United States v. Thirion,*[22] wherein our colleagues in the Eighth Circuit held that even though the asylum country had specifically denied extradition on a conspiracy charge, no specialty doctrine violation occurred when the district court instructed the jury on co-conspirator liability under *Pinkerton.* The court reasoned that a *Pinkerton* instruction merely "permitted the government to establish the defendant's membership in a conspiracy as an evidentiary fact to prove guilt in the related substantive offenses."[23]

We view such reasoning as persuasive, as we did on direct appeal, and conclude that the *Pinkerton* instruction did not violate the specialty doctrine.

### B. Dual or Double Criminality

"The doctrine of dual or double criminality is distinct from the doctrine of specialty."[24] While specialty focuses on the conduct prosecuted, "[d]ouble criminality refers to the characterization of the relator's criminal conduct insofar as it constitutes an offense under the law of the respective states .... no state shall use its processes to surrender a person for conduct which it does not characterize as criminal."[25] Dual criminality mandates that a prisoner be extradited only for conduct that constitutes a serious offense in both the requesting and surrendering country. Although this presents a slightly closer question, we conclude that

---

*Newball,* 554 F.2d 665, 685 (5th Cir.1977)).

[21]In *United States v. Abello-Silva,* 948 F.2d 1168 (10th Cir.1991), the court dealt with a defendant's specialty rule challenge to his extradition from Colombia. The court found "no right to object at trial to the introduction of evidence that was not part of the request for extradition, so long as the evidence is directed to the charge contained in the request for extradition.' " *Id.* at 1174 (citing RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 477 cmt. c (1987)). The court also stated that United States precedent controlled the application of the specialty doctrine and rejected the defendant's assertion that "any dispute over emphasis on 'facts' or 'offenses' in applying the specialty doctrine is resolved by the laws of the asylum country: Colombia." *Id.* at 1173.

[22]813 F.2d 146 (8th Cir.1987).

[23]*Gallo-Chamorro,* 48 F.3d at 506 (citing *Thirion,* 813 F.2d at 152-53).

[24]*Id.* at 507.

[25]*Herbage,* 850 F.2d at 1465 (quoting 1 M. CHERIF BASSIOUNI, INTERNATIONAL EXTRADITION: UNITED STATES LAW AND PRACTICE 324-25 (2d ed.1987)).

Gallo's dual criminality arguments ultimately are unpersuasive.

### III.    Standing

Initially, we address the issue of a defendant's standing to raise a dual criminality challenge to his prosecution. While it is true, as noted by the magistrate judge and district court, that dual criminality generally is a matter to be decided by the surrendering country, we decline to accept this as a complete bar to raising the issue in the requesting country. The magistrate judge noted that "[o]nce the requested state determines that a defendant is extraditable, the law of dual criminality is no longer an issue. Once extradition is ordered, the requesting country is bound by the law of specialty."[26]  We do not agree.

In *Puentes,* we observed that our circuit had not theretofore addressed the issue "whether a defendant has standing to assert a violation of an extradition treaty." We then answered in the affirmative.[27]  Although *Puentes* dealt with specialty, we are persuaded that dual criminality merely constitutes another basis upon which to establish a treaty violation. We therefore join other circuits ruling on the merits of dual criminality claims and hold that a defendant may assert a violation of an extradition treaty on dual criminality grounds.[28]

### IV.    Merits

We conclude that the *Pinkerton* instruction did not violate the doctrine of dual criminality. The Supreme Court has held that the doctrine of dual criminality "does not require that the name by which the crime is described in the two countries shall be the same; *nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries.* It is enough if the particular act charged is criminal in both jurisdictions."[29]  Further, that "defenses may be available in the requested state that would not be available in the requesting state, or that different requirements of proof are applicable in the two states,

---

[26]R & R, p. 8.

[27]*United States v. Puentes,* 50 F.3d 1567, 1575 (11th Cir.), *cert. denied,* 516 U.S. 933, 116 S.Ct. 341, 133 L.Ed.2d 239 (1995).

[28]*See United States v. Saccoccia;  United States v. Merit*, 962 F.2d 917, 921 (9th Cir.1992) (stating during dual criminality discussion that "[a]lthough the government argues that Merit lacks standing to protest his extradition as a violation of the treaty, in this circuit 'the person extradited may raise whatever objections the rendering country might have' ") (citing *United States v. Najohn,* 785 F.2d 1420, 1422 (9th Cir.1986));  *see also United States v. Khan,* 993 F.2d 1368 (9th Cir.1993) (reversing Count VIII of defendant's conviction for violation of the dual criminality principle);  *United States v. Levy,* 905 F.2d 326 (10th Cir.1990) (ruling on the merits of defendant's dual criminality argument without explicit discussion of standing).

[29]*Collins v. Loisel,* 259 U.S. 309, 312, 42 S.Ct. 469, 66 L.Ed. 956 (1922) (emphasis added).

does not defeat extradition under the dual criminality principle."[30]

Gallo's arguments misconstrue the focus of the dual criminality doctrine and the effect of a *Pinkerton* instruction. While dual criminality focuses on the characterization of the acts of the defendant, a *Pinkerton* instruction provides the jury with the legal ramifications of those acts under the laws of the United States. Once the surrendering country determines that the acts charged constitute a serious offense, the doctrine does not require that "the scope of the liability shall be coextensive" whether convicted in the requesting or surrendering state.[31]

With respect to Diplomatic Note E-1518,[32] we reaffirm our ruling on Gallo's direct appeal that "this note has no persuasive or precedential value in this case."[33] As we there noted, "international principles of law cannot be 'construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state.' "[34]

We are mindful of language in some cases which supports giving weight to the views of the surrendering country.[35] We conclude, however, that these cases deal primarily with a surrendering state's

---

[30]RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 476 cmt. d (1987).

[31]*See Wright v. Henkel,* 190 U.S. 40, 58, 23 S.Ct. 781, 47 L.Ed. 948 (1903) (holding that "absolute identity is not required. The essential character of the transaction [must be] the same, and made criminal by both statutes"); *see also Collins,* 259 U.S. at 312, 42 S.Ct. 469; *United States v. Riviere,* 924 F.2d 1289, 1302 (3rd Cir.1991) (observing that "the rule of double criminality does not require that the elements, purposes or punishment for foreign offenses be identical to ours. Rather, it requires that the acts charged be proscribed in each nation").

[32]*See infra,* note 4, for text of Note E-1518.

[33]*Gallo-Chamorro,* 48 F.3d at 508.

[34]*Id.* (citing *United States v. Archbold-Newball,* 554 F.2d 665, 685 (5th Cir.1977)).

[35]In *United States v. Jetter,* 722 F.2d 371, 373 (8th Cir.1983), the court analyzed the specialty doctrine in terms of whether the surrendering state would regard the prosecution as a breach of the extradition treaty. Even under such a standard, however, the prosecution in this case still involved the charges in the extradition request, the only dispute relates to a jury instruction. In *United States v. Najohn,* 785 F.2d 1420, 1422 (9th Cir.1986), the court felt "justified in regarding the statement of the executive branch as the last word of the Swiss government" because of the "absence of any effort by the defendant to obtain a Swiss judgment prohibiting Swiss consent to further prosecution." *Najohn* is thus distinguishable because it involved a prosecution for crimes other than those mentioned in the extradition, but for which the Swiss government had waived specialty. The court allowed the prosecution because the state introduced "a letter from the Magistrate of the District of Zurich requesting prosecution and a letter from the Swiss Embassy to the United States asking for prosecution and agreeing that the principle of specialty was suspended." *Id.* The court found nothing in the specialty doctrine to require courts to initiate an "investigation into the working of foreign governments." *Id.*

perspective on the criminality of a relator's conduct in the first instance, rather than on the theory of liability used to convict a relator for conduct that the surrendering state has viewed as criminal. As Gallo observed in his brief, the government of Colombia subjected the petitions for his extradition to a very careful analysis. Thereafter, it determined that some of the conduct alleged was criminal in Colombia, and it extradited Gallo on the basis of that conduct. Following this extradition, our government may prosecute Gallo for his acts in accordance with the laws of the United States.

## CONCLUSION

Gallo has not established ineffective assistance of counsel. Further, neither the dual criminality doctrine nor the doctrine of specialty render the district court's decision to give a *Pinkerton* instruction for the substantive counts erroneous. The judgment appealed is AFFIRMED.