

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2009

# USA v. Thomas

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3275

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Thomas" (2009). *2009 Decisions*. Paper 1535.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1535

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3275
_____

UNITED STATES OF AMERICA

v.

CORBIN THOMAS, a/k/a Jack, a/k/a/ Patrick,
a/k/a Francis Walcott,

                                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 98-cr-136-01)
District Judge: Honorable J. Curtis Joyner

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 8, 2009

Before: FUENTES, FISHER, and ALDISERT Circuit Judges.

(Opinion Filed: April 16, 2009)

───────────────

OPINION OF THE COURT

───────────────


FUENTES, Circuit Judge:

        Corbin Thomas appeals his conviction and sentence for operating a continuing

criminal enterprise and related drug trafficking and money laundering offenses. The primary issues on appeal are whether Thomas's prosecution violated the 1972 Extradition Treaty between the United States and the United Kingdom—Extradition Treaty, U.S.-U.K., June 8, 1972, 28 U.S.T. 227("U.S.-U.K. Extradition Treaty")—and whether that prosecution violated the Speedy Trial Act, 18 U.S.C. § 3161. For the reasons set forth below, we will affirm the judgment of the District Court.

## I.

From 1990 to 1995, Thomas was the director of an organization that used couriers to transport thousands of pounds of marijuana worth over one million dollars from California for distribution to wholesalers in Philadelphia (the "Marijuana Distribution Organization" or the "Organization").

The profits from the Marijuana Distribution Organization were Thomas's only income. He used this income to purchase, renovate, and furnish his home and to purchase a number of cars. Thomas used straw-purchasers to disguise the source of the funds for these purchases and the fact that he was the true purchaser.

The Government's investigation of the Marijuana Distribution Organization dates back to October 1993, when an export company contacted U.S. Immigration and Customs Enforcement about a suspicious cash payment made by an associate of Thomas's who was trying to ship a car to Jamaica. In April 1994, Customs inspectors investigating the shipment questioned Thomas's brother and another member of the Organization.

2

Inspectors also questioned Thomas's wife and sister-in-law. As the investigation expanded, the mother of Gary Gordon—a senior member of the Organization—was served with a grand jury subpoena. The Organization arranged for her to be represented by counsel and Thomas paid her legal fees.

Patricia Frydlewicz, a street level dealer and courier for the Organization, was served with a grand jury subpoena in 1995. Gordon and Thomas arranged for her to be represented by counsel and Thomas paid her legal fees. In 1995, Tina Jones DeVeaux, who carried cash for the Organization, was also served with a grand jury subpoena. Again, Thomas arranged for her to be represented by counsel and paid her legal fees. Thomas also contacted DeVeaux and told her that she "needed to keep [her] mouth quiet." App. at 267. He continued by saying that "if [she] didn't, [she] wouldn't be happy." Id. DeVeaux felt threatened. During this period, the Internal Revenue Service joined the investigation.

Later in 1995, Thomas's wife was murdered. Thomas fled the United States for Jamaica in December 1995 and, at about the same time, Gordon fled to New York. According to Gordon, they fled because they "were both being looked for by the police as far as these indictments [in the federal drug trafficking case]."[1] Supp. App. at 202.

---

[1] Thomas and Gordon had not been indicted in 1995. From the context of his testimony, it appears that Gordon misspoke and was referring to the grand jury investigation which eventually resulted in the indictment in this case.

Thomas was indicted in this case in March 1998.  The indictment was unsealed in September 1998.  Thereafter, Thomas was arrested by Jamaican authorities on a warrant obtained as a result of this indictment.  He was released after he bribed a Jamaican police officer, promising additional payment in the future.  After his release, Thomas fled to the United Kingdom.  According to Gordon, Thomas left Jamaica "[b]ecause he was being sought.  He thought obviously if he didn't pay the [extra cash he had promised the Jamaican officer], he was going to be sought by the police."  Supp. App. at 203.  Thomas was apprehended in the United Kingdom in 2001 and was extradited in 2005.

Thomas first appeared in United States District Court on these charges in April 2005.  After a number of delays, trial began on March 26, 2007.  Thomas was convicted on all counts and was sentenced to 420 months' incarceration.[2]

## II.  A.

The United States' extradition request described each of the offenses on which Thomas had been indicted, including operating a continuing criminal enterprise. Thomas's extradition order did not identify the continuing criminal enterprise count by

---

[2] In particular, Thomas was convicted of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846; conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); seven counts of distributing marijuana in violation of 21 U.S.C. § 841(a)(1); eight counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848.

The judgment incorrectly states that Thomas was adjudicated guilty of obstruction of justice in violation of 18 U.S.C. § 1512(b)(1).  The Government agreed that this count should be dismissed because it is not an extraditable offense.  See Dist. Ct. Dkt. # 207. On appeal, neither party has raised an issue related to this count.

4

name, but did allege, among other charges, that "between [the] 1st day of November 1990 and [the] 30th day of November 1995 [Thomas] conspired together with others known and unknown to supply a controlled drug of Class B to another in contravention of section 4(1) Misuse of Drugs Act 1971." App. at 89. Thomas argues that the continuing criminal enterprise count should have been dismissed because this offense does not exist in the United Kingdom and was not listed in his extradition order. Thus, Thomas maintains that prosecuting him for this offense was a violation of the U.S.-U.K. Extradition Treaty and the principles of "dual criminality" and "specialty."[3]

We will first address whether Thomas has standing to raise a challenge based on the extradition treaty. "Because treaties are agreements between nations, individuals ordinarily may not challenge treaty interpretations in the absence of an express provision within the treaty or an action brought by a signatory nation." United States ex rel. Saroop v. Garcia, 109 F.3d 165, 168 (3d Cir. 1997). However, a treaty may also create private rights. In United States v. Rauscher, 119 U.S. 407, 418 (1886), the Supreme Court held that the Webster-Ashburton Treaty—a predecessor to the current U.S.-U.K. Extradition Treaty—implied what we now call a "specialty requirement," and that this was such a private right. Id. at 419. Thus, the Court held that it was bound to enforce the specialty requirement when raised by the extradited person, rejecting the argument that "the only

_____

[3] Thomas's arguments based on dual criminality and specialty raise questions of law subject to plenary review. See United States v. Riviere, 924 F.2d 1289, 1296 (3d Cir. 1991). Thomas's extradition challenge does not implicate the other seventeen counts on which he was convicted.

5

mode of enforcing the obligations of the treaty is through the action of the respective national governments." Id. at 419, 430.

Although we previously stated, in dicta, that a defendant lacks standing to invoke a treaty or the rule of speciality (see Saroop, 109 F.3d at 168) we believe, as do the majority of other Circuits to rule on this issue, that a defendant such as Thomas has standing to raise these arguments.[4] See Gallo-Chamorro v. United States, 233 F.3d 1298, 1306 (11th Cir. 2000) (holding that "a defendant may assert a violation of an extradition treaty on dual criminality grounds"); United States v. Cuevas, 847 F.2d 1417, 1426 (9th Cir.1988) (holding that "[a] person extradited may raise whatever objections the extraditing country would have been entitled to raise"); United States v. Levy, 905 F.2d 326, 329 n.1 (10th Cir. 1990) (same); United States v. Thirion, 813 F.2d 146 (8th Cir. 1987) (same); but see United States v. Burke, 425 F.3d 400, 408 (7th Cir. 2005) (declining to consider defendant's specialty argument because "extradition treaties do not create personal rights enforceable by criminal defendants").

As previously stated, Thomas contends that the rule of dual criminality barred his prosecution for operating a continuing criminal enterprise, because this "is not a criminal offense under the law of the United Kingdom." Appellant's Br. at 14. Under the rule of

---

[4] Saroop argued that the treaty under which she was extradited was invalid. Saroop, 109 F.3d at 168. We held that Saroop had standing to bring this claim, but stated that she would have lacked standing to bring "suit invoking the treaty or the Rule of Specialty." Id.

dual criminality, an extraditable offense must be punishable under the criminal laws of both the surrendering and the requesting state. See United States v. Saccoccia, 58 F.3d 754, 766 (1st Cir. 1995). This principle is embodied in the U.S.-U.K Extradition Treaty as follows:

> Extradition shall be granted for an act or omission the facts of which disclose an offense within any of the descriptions listed in the Schedule annexed to this Treaty, which is an integral part of the Treaty, or any other offense, if: (a) the offense is punishable under the laws of both Parties by imprisonment or other form of detention for more than one year or by the death penalty; (b) the offense is extraditable under . . . the law of the United Kingdom . . .; and (c) the offense constitutes a felony under the law of the United States of America.

U.S.-U.K. Extradition Treaty, art. III(1) (emphasis added).

The Schedule includes "[a]n offense against the law relating to narcotic drugs" including marijuana. Id. Further, in the United Kingdom conduct constitutes an "extradition offense" if

> (a) the conduct occurs in [the United States]; (b) the conduct would constitute an offence under the law of the relevant part of the United Kingdom punishable with imprisonment or another form of detention for a term of 12 months or a greater punishment if it occurred in that part of the United Kingdom; (c) the conduct is so punishable under the law of the [the United States] (however it is described in that law).

Extradition Act, 2003, c. 41, § 137 (U.K.) (emphasis added).

Both the Treaty and the definition of "extradition offense" require conduct that is subject to serious criminal sanction in both countries. Beyond this limitation, neither

7

requires further reference to how or why that conduct is sanctioned in either country. Thus, "[t]he rule of double criminality does not require that the elements, purposes, or punishment for foreign offenses be identical to ours. Rather, it requires that the acts charged be proscribed in each nation." United States v. Riviere, 924 F.2d 1289, 1302 (3d Cir. 1991). "If the same conduct is subject to criminal sanctions in both jurisdictions, no more is [required]" to satisfy the principle of dual criminality. Saccoccia, 58 F.3d at 766.

Thomas contends that his prosecution for operating a continuing criminal enterprise is inconsistent with the rule of speciality because his extradition order "neither mentions [continuing criminal enterprise] nor recites the elements of [continuing criminal enterprise] . . . ." Appellant's Br. at 15. The principle of specialty requires that an extradited defendant be tried for the crimes on which extradition has been granted, and none other. Riviere, 924 F.2d at 1297. The U.S.-U.K. Extradition Treaty expresses this principle as follows:

> A person extradited shall not be detained or proceeded against in the territory of the requesting Party for any offense other than an extraditable offense established by the facts in respect of which his extradition has been granted . . . .

U.S.-U.K. Extradition Treaty, art. XII(1). "[T]he inquiry into specialty boils down to . . . whether the surrendering state would deem the conduct for which the requesting state actually prosecutes the defendant as interconnected with (as opposed to independent from) the acts for which he was extradited." Saccoccia, 58 F.3d at 767.

The continuing criminal enterprise count charged Thomas with deriving his income from directing a large organization that distributed marijuana over a five-year period.[5] This conduct constitutes an offense under the law of the United Kingdom punishable with imprisonment for longer than twelve months. See Misuse of Drugs Act, 1971, c. 38, §§ 4(3), 5(3), Schedule 4 (U.K.). Indeed, Thomas acknowledges that conspiracy to distribute a controlled substance is an offense in the United Kingdom. It is irrelevant that another U.S. offense, conspiracy to distribute marijuana, more closely resembles the U.K. offense, or that the U.S. offense involves additional elements. Accordingly, dual criminality was not offended by Thomas's prosecution for operating a continuing criminal enterprise.

Further, because Thomas was prosecuted for an extraditable offense established by the facts in respect of which his extradition was granted, specialty is not offended. See also United States v. Levy, 905 F.2d 326, 328 (10th Cir. 1990) (holding that prosecuting a defendant for operating a continuing criminal enterprise was not violation of dual criminality or specialty principles in the U.S.-U.K. Extradition Treaty). Thus, the District Court did not err in denying Thomas's motion to dismiss on the grounds of dual

---

[5] "[A] person is engaged in a continuing criminal enterprise if--(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter–(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and (B) from which such person obtains substantial income or resources." 21 U.S.C. § 848 (c).

criminality and specialty.

B.

Next, Thomas argues the District Court erred in denying his motion to dismiss for violation of the Speedy Trial Act.[6]

The Speedy Trial Act requires that a criminal trial start within 70 days of a defendant's first appearance in court unless the "speedy trial clock" is properly stopped. 18 U.S.C. § 3161(c)(1) (2006). Among other circumstances, the speedy trial clock does not run during any period of "delay resulting from any pretrial motion from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F) (2006).[7] This provision applies to motions filed by either the government or the defendant. See United States v. Oberoi, 547 F.3d 436, 455 (2d Cir. 2008); United States v. McGhee, 532 F.3d 733, 736 (8th Cir. 2008). The motion need not cause "actual delay of the trial." See, e.g., United States v. Wilson, 835 F.2d 1440, 1443 (D.C. Cir. 1987).

The District Court may also stop the speedy trial clock based on findings that "the

---

[6] Thomas's Speedy Trial Act challenge implicates three standards of review: First, the District Court's interpretation of the Speedy Trial Act is subject to plenary review. United States v. Rivera Constr. Co., 863 F.2d 293, 295 n.3 (3d Cir. 1988). Second, the District Court's factual findings are reviewed for clear error. Id. Third, the District Court's ultimate decision to grant a continuance is reviewed for abuse of discretion. Id.

[7] A number of Speedy Trial Act provisions were renumbered as a result of the 2008 amendments. None of the provisions at issue in this case were otherwise altered.

10

ends of justice served by taking such action" outweigh the public and the defendant's interest in a speedy trial. 18 U.S.C. § 3161(h)(8) (2006). A district court's findings are generally sufficient if they track the language of the statute, and are based on factual assertions contained in one party's motion for a continuance. See, e.g., United States v. Jordan, 544 F.3d 656, 664 (6th Cir. 2008); United States v. Gamboa, 439 F.3d 796, 803 (8th Cir. 2006). Findings must be sufficiently clear and specific to ensure that the district court considered the relevant factors and to provide an adequate record for appellate review. Cf. United States v. Williams, 511 F.3d 1044, 1056-1057 (10th Cir. 2007) (describing the purposes served by requiring on the record factual findings). These "findings must be put on the record by the time a district court rules on a defendant's motion to dismiss" for violation of the Speedy Trial Act. Zedner v. United States, 547 U.S. 489, 507 (2006); see also United States v. Rivera Constr. Co., 863 F.2d 293, 297 (3d Cir. 1988) (holding that while district court "may not provide an after-the-fact justification for unauthorized delays" its reasons for granting a delay may be placed on the record after the grant of a continuance). "[I]f a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted." Zedner, 547 U.S. at 508 (2006).

Thomas's first appearance in court was on April 28, 2005. The speedy trial clock was stopped from May 2, 2005 to May 11, 2005 and May 17, 2005 to June 1, 2005 by pretrial motions. It was stopped from June 1, 2005 to May 8, 2006 by order of the

11

District Court, supported by factual findings tracking the language of the statute. Eight days elapsed on the speedy trial clock between April 2005 and May 2006.

Thomas's trial did not start on May 8, 2006. Instead, on May 3, 2006, the District Court held a lengthy hearing on Thomas's motion to appoint new counsel. During the hearing, the District Court rejected the Government's arguments concerning the harm that would be caused by delaying the trial while new counsel prepared. Instead, the District Court found that any prejudice to the Government was insubstantial compared to Thomas's need for new counsel given the "total breakdown between client and attorney." The District Court dismissed Thomas's original trial counsel and stated that it would set a new trial date "as soon as your counsel indicates he'll be ready to pick up the time and proceed on." After new counsel was appointed, the District Court rescheduled Thomas's trial for November 6, 2006. In ruling on Thomas's motion to dismiss, the District Court placed on the record additional findings concerning the May 2006 continuance; the District Court stated that "the record is obvious that [Thomas] would have been prejudiced greatly by not having counsel to represent him at the time that he requested." Supp. App. at 466.

Taken together, the May 2006 and March 2007 hearings contain adequate findings; the hearing transcripts reveal that the District Court considered the appropriate factors and provide an adequate basis for appellate review. The need for reasonable time to obtain counsel and for the effective preparation of counsel are factors that a District Court

12

may consider in granting a continuance consistent with the Speedy Trial Act. 18 U.S.C. § 3161(h)(8)(B)(iv) (2006). Accordingly, we conclude that the period between May 8, 2006 and November 6, 2006 was properly excluded from the speedy trial clock.

On October 6, 2006, Thomas's replacement counsel filed a motion to continue the November 2006 trial date. The District Court granted this motion and continued the trial to March 12, 2007 without placing any findings on the record.[8] However, we find that much of this time—November 20, 2006 to January 12, 2007 and January 17, 2007 to March 26, 2007—was excluded by pretrial motions. Trial started on March 26, 2007.

Accordingly, only approximately 25 days elapsed on the speedy trial clock and Thomas's rights under the Speedy Trial Act were not violated. Thus, the District Court did not err in denying Thomas's motion to dismiss.

## C.

Third, Thomas argues that the District Court erred in admitting evidence on and giving jury instructions about flight.[9] Thomas admits that he fled the United States in December 1995, but claims that his flight was motivated by concern that he would be

---

[8] The District Court's findings at the time of the motion to dismiss do not relate to this period of continuance.

[9] We review a district court's decisions regarding the admissibility of evidence for abuse of discretion. Quinn v. Consol. Freightways Corp. of Delaware, 283 F.3d 572, 576 (3d Cir. 2002). The decision to give a particular jury instruction is also reviewed for abuse of discretion. United States v. Weatherly, 525 F.3d 265, 269-270 (3d Cir. 2008).

13

implicated in the November 1995 murder of his wife.

Evidence of a defendant's flight is admissible to prove consciousness of guilt.

United States v. Pungitore, 910 F.2d 1084, 1151 (3d Cir. 1990). The defendant need not

be aware that he has been indicted for this evidence to be admissible. Id. (holding that

evidence of flight soon after defendant learned that co-conspirator had become a

government informant was admissible). As set forth above, the circumstances of

Thomas's flight support an inference that Thomas fled, at least in part, because of the

grand jury's investigation of the Marijuana Distribution Organization. Accordingly, the

District Court did not err in permitting the Government to introduce this evidence, or in

instructing the jury that it could infer consciousness of guilt from flight.

D.

Thomas argues that the District Court erred in calculating the applicable

Guidelines range and that his sentence of 35 years was unreasonable.[10]

The District Court properly enhanced Thomas's sentence for obstruction of justice

pursuant to Guidelines § 3C1.1; at trial, the Government elicited testimony that Thomas

threatened DeVeaux. And, the District Court properly enhanced Thomas's sentence for

---

[10] We exercise plenary review over a district court's interpretation of the Guidelines, reviewing its factual determinations for clear error. United States v. Grier, 475 F. 3d 556, 570 (3d Cir. 2007) (en banc). We review a district court's ultimate determination of a sentence for reasonableness under a deferential abuse of discretion standard. Gall v. United States, — U.S. —, 128 S. Ct. 586, 597-98 (2007).

possession of a dangerous weapon pursuant to Guidelines § 2D1.1; there was testimony that Thomas and his co-conspirators kept firearms in proximity to drugs and drug proceeds, and used the weapons to defend themselves.

Finally, we conclude that the Guidelines' range sentence of 420-months' imprisonment was reasonable. The District Court discussed the factors set forth at 18 U.S.C. § 3553(a) at length. In evaluating those factors, it was not improper for the District Court to consider that Thomas chose a life of crime despite being well-educated and coming from a supportive community. Further, there was no unwarranted disparity between the sentences received by Thomas and his co-defendants, including Gordon, who received a sentence of 240 months imprisonment. The District Court explained that Thomas "and Mr. Gordon are two different individuals. He is a captain under your organization, and you are a general." App. at 246. Thus, we find that the District Court did not abuse its discretion in sentencing Thomas to 420 months' imprisonment.

III.

For the foregoing reasons, we will affirm Thomas's conviction and the District Court's judgment of sentence._____

15