[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13090
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-23206-JEM

FERNANDO GARCIA-GODOS,

Petitioner-Appellant,

versus

WARDEN,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 21, 2021)

Before JILL PRYOR, LUCK and DUBINA, Circuit Judges.

PER CURIAM:

Petitioner/Appellant Fernando Garcia-Godos, a counseled federal prisoner

who was extradited from Peru to complete service of a 12-year sentence for federal

drug offenses, appeals the district court's denial of his 28 U.S.C. § 2241 habeas corpus petition, challenging that extradition. He argues on appeal that the district court erred by finding that the government complied with the rule of specialty,[1] as required for proper extradition, when it detained him on a separate charge of escape for only one day and dismissed that charge at the earliest opportunity. He also argues that the district court erred by finding that the government satisfied its obligations under the Extradition Treaty between the United States and the Republic of Peru, U.S.-Peru, July 26, 2001, S. Treaty Doc. No. 107-6 ("Treaty"), and by finding that the Treaty did not bar his extradition to serve a sentence for his federal drug offenses. After reviewing the record and reading the parties' briefs, we affirm the district court's order denying Garcia-Godos's § 2241 petition.

I.

In 1977, a federal grand jury charged Garcia-Godos with conspiracy to import cocaine into the United States and to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 952(a), 960(a)(1), 963; importation of cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 18 U.S.C. § 2; and four counts of possession with intent to distribute cocaine, in

---

[1] The rule of specialty provides that a nation that receives a criminal defendant pursuant to an extradition treaty may try the defendant only for those offenses for which the surrendering nation granted extradition. *United States v. Puentes*, 50 F.3d 1567, 1572 (11th Cir. 1995).

violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  He pled guilty, and the district court sentenced him to a total of 12 years' imprisonment.  In 2016, the government filed a criminal complaint against Garcia-Godos, charging him with escape from custody, in violation of 18 U.S.C. § 751.  The complaint alleged that he had escaped from custody in 1980, and an international investigation had determined that he was residing in Peru.  The government asked Peru to provisionally arrest Garcia-Godos pursuant to the Treaty.  Subsequently, authorities extradited Garcia-Godos from Peru, and he appeared before a magistrate judge for an initial appearance.  At that time, the government moved to dismiss the escape charge, and the magistrate judge granted the motion.

In August 2018, Garcia-Godos filed a petition for writ of habeas corpus, contending that: (1) the government violated the rule of specialty; (2) the government filed an incomplete request that failed to comply with the Treaty's requirements; and (3) his 1977 narcotics offenses were not eligible for extradition under the Treaty.  After the government responded, the magistrate judge conducted an evidentiary hearing and issued a report and recommendation advising the district court to deny the petition.  Garcia-Godos objected to the report and recommendation, but the district court overruled the objections and adopted the report in its entirety and provided additional reasoning concerning two of Garcia-Godos's objections.  (R. DE 43).  Garcia-Godos then filed a timely appeal.

3

## II.

Garcia-Godos contends that the government violated the rule of specialty after his extradition because the government made him appear for the escape charge, not the 1978 drug charge. He insists that the rule of specialty limits the government to enforcing the 1978 sentence that was the basis of the extradition request and this prevented the government from prosecuting him on additional charges. "Our review of an order of extraditability presents a legal question concerning the interpretation of a treaty and is, therefore, subject to plenary review." *United States v. Puentes*, 50 F.3d 1567, 1575 (11th Cir. 1995). An extradited defendant has standing to allege any violations of the rule of specialty that the extraditing country might have brought. *Id.* at 1572.

The objective of the rule of specialty is to "insure that the treaty is faithfully observed by the contracting parties." *United States v. Diwan*, 864 F.2d 715, 721 (11th Cir. 1989). Therefore, a defendant may assert only "those objections to the extradition process that the surrendering country might consider a breach of the extradition treaty." *Id.*

The Treaty expressly incorporates the rule of specialty. (R. DE28-2 at 13; art. XIII(1)(a) ("A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for: . . . an offense for which extradition

4

was granted.")).  The Treaty also provides that a person may be extradited under the Treaty for "an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment."  (*Id.* art. XIII(1)(c)).

In *United States v. Rauscher*, the Supreme Court held that the district court lacked jurisdiction to try an extradited defendant for an offense that was not described in the extradition treaty.  119 U.S. 407, 430, 7 S. Ct. 234, 246 (1886).  There, the government had asked Great Britain to extradite the defendant for the extraditable offense of murder, but then tried him on a charge of cruel and unusual punishment, which was not covered by the treaty.  *Id.* at 409–11, 7 S. Ct. at 236.  Similarly, in *Johnson v. Browne*, the Supreme Court concluded that Johnson, an extradited fugitive who fled to Canada while subject to a conviction for conspiracy to defraud the United States, could not be punished for that crime, which was not covered by the extradition treaty between the United States and Canada.  205 U.S. 309–12, 321–22, 27 S. Ct. 539, 539–41, 542–43 (1907).

By contrast, we held that the prosecution of an extradited defendant on a count of conspiracy to produce child pornography did not violate the extradition treaty between the United States and Great Britain when the British Home Secretary confirmed that prosecution for this count was not a breach of the treaty.  *Diwan*, 864 F.2d at 716, 720-21.  We noted that, to determine whether the prosecution was a breach of the extradition treaty, it was necessary to determine

5

whether Great Britain "would regard the prosecution as an affront to its sovereignty." *Id.* at 721.

We conclude from the record here that the district court properly found that the government did not violate the rule of specialty because it sought the extradition of Garcia-Godos only for his narcotics offenses and dismissed his separate charge of escape, an offense for which he was not extradited, at the earliest opportunity. The government did not continue prosecuting Garcia-Godos for his 2016 escape; thus, contrary to Garcia-Godos's argument, there was no breach of the Treaty by the government.

## III.

Garcia-Godos argues that the government presented a deficient extradition request to Peru. Under Article VI(2)(d), an extradition request must include "the text of the laws indicating that neither the prosecution nor the execution of the penalty are barred by lapse of time in the Requesting State." (R. DE28-2 at 8). Article VI(4)(c) further states that, when a request concerns the enforcement of an existing judgment the requesting country should provide a "copy of the sentence imposed, if the person sought has been sentenced, and, if applicable, a statement establishing to what extent the sentence has been carried out." (*Id.* at 9). In sum, Garcia-Godos contends that the government violated the Treaty because it failed to

6

provide the text of 28 U.S.C. § 2466, the law indicating that the execution of his sentence was not time-barred.

In *Johnson*, the Supreme Court stated that the decision as to whether the extradited defendant's crime was an extraditable offense under the extradition treaty between the United States and Canada "was a matter for the decision of the [Canadian] authorities." 205 U.S. at 316, 27 S. Ct. at 540. By contrast, we have held that a defendant has standing to assert a violation of an extradition treaty on the ground of dual criminality, which mandates that a prisoner be extradited only for conduct that constitutes a serious offense in both the requesting and surrendering country. *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1306 (11th Cir. 2000).

In the context of reviewing a foreign country's request for extradition, we have applied "a rule of non-inquiry," which precludes us "from assessing the investigative, judicial, and penal systems of foreign nations when reviewing an extradition request." *Arias Leiva v. Warden*, 928 F.3d 1281, 1295 (11th Cir. 2019) (quotation marks omitted). This rule "serves interests of international comity by relegating to political actors the sensitive foreign policy judgments that are often involved in the question of whether to refuse an extradition request." *Id.* (quotation marks omitted).

7

Under the Treaty, "[a]ll requests for extradition shall be supported by: . . . (d) the text of the laws indicating that neither the prosecution nor the execution of the penalty [is] barred by lapse of time in the Requesting State." (R. DE28-2 at 8; art. VI(2)(d)). The Treaty also provides that an extradition request for a person who has been convicted of, or sentenced for, the offense for which extradition is sought "shall also be supported by: . . . (c) a copy of the sentence imposed, if the person sought has been sentenced, and, if applicable, a statement establishing to what extent the sentence has been carried out." (*Id.* at 9; art. VI(4)(c)).

Under § 3282, the government may not prosecute, try, or punish any person for a criminal offense unless the person is charged in an indictment or an information within five years of committing the offense. 28 U.S.C. § 3282. Under § 2466(a), the statute that Garcia-Godos argues that the government should have included in its extradition affidavit, a judicial officer may disallow a person from using the resources of the federal courts in furtherance of a claim in a civil forfeiture action upon finding that the person has left the jurisdiction of the United States to avoid criminal prosecution. 28 U.S.C. § 2466(a).

We have not addressed whether we may review an argument that the government failed to satisfy its obligations under an extradition treaty, when a foreign court found that the government had satisfied these obligations. However, if this argument is reviewable, we conclude, based on the record, that the district

8

court did not err because the government satisfied its obligations under the Treaty. The government complied with Article VI(2)(d) of the Treaty by providing the text of 18 U.S.C. § 3283, which indicated that the prosecution of Garcia-Godos's drug offenses was not time-barred. The Peruvian Supreme Court acknowledged that the government had provided the relevant substantive and procedural legal texts and that Garcia-Godos's criminal action was not time-barred.

Additionally, the Treaty did not require the government to indicate that no statute of limitations existed for the execution of a judgment. The government also was not required to provide the text of 28 U.S.C. § 2466. Moreover, the record demonstrates that the government complied with Article VI(2)(d) of the Treaty by providing a statement in the extradition affidavit that Garcia-Godos had completed about two years of his 12-year sentence for his federal drug offenses. Contrary to Garcia-Godos's arguments, the Treaty does not require the government to calculate the exact amount of time, including time served and gain-time, that he would be in custody. Accordingly, we conclude from the record that the district court properly found that the government complied with Article VI of the Treaty.

## IV.

Finally, Garcia-Godos contends that the government failed to prove that his offenses were extraditable, and the Treaty bars an extradition to complete a sentence for federal drug offenses that occurred before the execution of the

9

Convention.  He also claims that the Treaty, which includes post-1988 narcotics cases, does not cover pre-1988 narcotics cases and that the district court erred by rejecting his argument that his extradition violated his *ex post facto* rights.

When interpreting a treaty, courts first look at the text of the treaty and the context in which the written words are used.  *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 534, 111 S. Ct. 1489, 1493 (1991).  If the language of the treaty is clear and unambiguous, we will apply the words of the treaty as written.  *United States v. Duarte-Acero,* 208 F.3d 1282, 1285 (11th Cir. 2000).

Under Article II of the Treaty, an offense qualifies as an extraditable offense if it is punishable under the laws in both the United States and Peru by imprisonment of more than one year.  (R. DE28-2 at 6; art. II(1)).  A conspiracy to commit such an offense also qualifies as an extraditable offense. (*Id.*; art. II(2)). However, "[e]xtradition shall not be granted if the offense for which extradition is requested constitutes a political offense."  (*Id.* at 7; art. IV(2)).  The Treaty specifies that illicit drug trafficking and related offenses, as described in the Convention, are not political offenses.  (*Id.*; art. IV(2)(c)(i)).  The provisions of the Treaty apply "to extradition requests initiated subsequent to [its] entry into force, even if the crimes were committed prior to that date, provided that at the time of their commission they constituted offenses under the laws in both Contracting States."  (*Id.* at 15; art. XVIII(b)).

10

The *Ex Post Facto* Clause provides that "[n]o ex post facto Law shall be passed." U.S. CONST., ART. I, § 9, CL. 3. This Clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 42–43, 110 S. Ct. 2715, 2719–20 (1990).

To the extent that this issue is reviewable, we conclude that the district court did not err by finding that Garcia-Godos's narcotics offenses were covered by the Treaty as extraditable offenses. These offenses are punishable under the laws in both the United States and Peru by imprisonment of more than one year incarceration. (R. DE28-2 at 6; art. II(1)-(2)). Although the Treaty specified that drug trafficking offenses covered by the Convention could not be considered political offenses, it did not exclude drug offenses committed before the signing of the Convention as extraditable offenses. (*Id*. at 7; art. IV(2)(c)(i)).

Moreover, the Treaty also provides that it applies to offenses committed before the Treaty was signed in 2001. (*Id.* at 15; art. XVIII(b)). Further, to the extent that Garcia-Godos argues that the government's punishment of him for these offenses violates the *Ex Post Facto* Clause, this argument is without merit because his extradition did not retroactively alter the definition of his narcotics offenses or increase the punishment for these offenses. *See Collins*, 497 U.S. at 42–43, 110 S.

11

Ct. at 2719–20.  Accordingly, based on the aforementioned reasons, we affirm the district court's order denying Garcia-Godos's § 2241 petition.

**AFFIRMED.**