**James Arthur NIXON,**
**Petitioner–Appellant,**

v.

**Lanson NEWSOME,**
**Respondent–Appellee.**

No. 88–8244.

United States Court of Appeals,
Eleventh Circuit.

Nov. 14, 1989.

As Amended Dec. 12, 1989.

Don Samuel, Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, State Law Dept., Paula K. Smith, Atlanta, Ga., for respondent-appellee.

Before KRAVITCH, JOHNSON and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

This case arises on appeal from the denial of a petition for habeas corpus relief brought under 28 U.S.C. § 2254 by a Georgia state prison inmate, James A. Nixon. Nixon was convicted of murder and sentenced to life imprisonment. The district court denied Nixon's petition. We reverse.

## I. BACKGROUND

Early in the morning of October 30, 1979, James A. Nixon drove up to Tom and Kathy Billings' trailer in Jonesboro, Georgia. Tom Billings let Nixon, with whom he occasionally worked in the carnival games business, into the trailer. After the three were seated, Nixon and Tom Billings began to discuss a disagreement Billings had been having with a mutual acquaintance, Anthony Zolun. The conversation became tense, so Kathy Billings walked past Nixon to the side of the trailer, where the bedroom was located.

After she had been in the bedroom a moment, Kathy Billings heard a commotion. When she rushed back to the living room, she saw Nixon and Billings struggling over an object between them. Zolun burst into the trailer. Kathy testified that Zolun fired a large .45 caliber handgun from the doorway into the trailer. Another gun, presumably the object Nixon and Tom Billings were struggling over, also discharged during the melee. Tom Billings dropped to the floor, mortally wounded by two .32 caliber bullets. Nixon fell with him. Nixon shouted to Zolun to stop firing, that Zolun might hit Nixon, and the two rushed out the door.

Zolun was tried for the murder of Tom Billings, a little over a year after the incident. After a mistrial, Zolun was retried and acquitted. At Zolun's trial, Kathy Billings identified Zolun as the man who had killed her husband. She also testified that she never saw Nixon with a gun and that

no gunshots were fired until Zolun burst into the trailer.

Nixon was subsequently arrested in Canada. He was interrogated while in the hospital about the Billings' murder and made an inculpatory statement.[1] After Nixon was returned to Georgia, he was tried for Billings murder. The trial occurred on December 10 and 11, 1984, over five years after the murder. Kathy Billings, the only eyewitness other than Nixon himself, testified. At this trial, Kathy Billings identified Nixon as the man who had killed her husband. She also testified that both Nixon and Zolun had guns and were firing. At the end of the trial, the jury returned a verdict of guilty and Nixon was sentenced to life in prison.

Nixon's conviction was affirmed on direct appeal to the Georgia Supreme Court.[2] Nixon then filed a pro se habeas petition in the Superior Court of Tatnall County, Georgia. After conducting an evidentiary hearing, the court denied relief, on January 29, 1987.[3] After the Georgia Supreme Court denied his application for a certificate of probable cause to appeal, Nixon, still pro se, filed a pro se petition for federal habeas relief in the district court. Without conducting a hearing on Nixon's claims, the district court adopted the report of the magistrate and denied relief on March 30, 1988. Still acting pro se, Nixon appealed. This court appointed counsel for Nixon on appeal.

Nixon makes four claims on appeal. First, he claims that his trial counsel was ineffective. Second, he contends that he was denied due process by the prosecution's knowing use of misleading testimony. Third, Nixon claims that the district court erred in denying his request for appointed counsel for his federal habeas petition. Fourth, he claims that the district court erred in denying his request for an evidentiary hearing. We agree that Nixon's trial counsel was ineffective, and thus we need not reach the other three claims.[4]

## II.  DISCUSSION

On cross-examination of Kathy Billings, Nixon's attorney asked her if she had testified at Zolun's trial that Zolun had killed her husband. Kathy denied this, saying: "No. I never indicated that. I always thought that Jimmy Nixon did." Nixon trial transcript, Ex. 1, at 28. Nixon's attorney failed to impeach Kathy with her prior testimony at Zolun's trial. There, she had unequivocally identified Zolun as the person who shot her husband.[5]

1. The Canadian police officer testified that Nixon said, "He shot at me and I shot at him." Ex. 1 at 138. Nixon testified that he merely stated that "he shot at me and he got shot." *Id.* at 162.

2. *Nixon v. State,* 255 Ga. 656, 340 S.E.2d 7 (Ga.1986).

3. The state habeas judge assumed that counsel was deficient in failing to impeach Kathy Billings with her prior inconsistent testimony, but concluded there was no prejudice.

4. A federal evidentiary hearing is not necessary to resolve Nixon's ineffectiveness claim. Because we can determine from the record developed in the state habeas corpus court that Nixon's counsel was ineffective, an evidentiary hearing is not necessary. *Gates v. Zant,* 863 F.2d 1492 (11th Cir.1989).

Nixon had four additional claims before the district court: (1) that the trial court should have charged the jury as to self-defense and the lesser charge of manslaughter; (2) that Nixon was denied effective assistance of counsel on his appeal; (3) that improper character evidence was admitted at his trial; and (4) that he was

denied a full and fair adjudication of the merits of his habeas claim in state court.

Nixon voluntarily dismissed the jury charge issue (though he did not dismiss the claim that his counsel was ineffective for failing to request instructions on self-defense and manslaughter). The ineffectiveness of appellate representation and the character evidence claims have not been advanced on appeal, and are thus abandoned. Thus, these three claims are not before this court. The claim that he was denied a full and fair hearing in the state habeas court is the gist of Nixon's argument before us that an evidentiary hearing was warranted in district court, and thus does not warrant independent treatment.

5. At Zolun's trial, Kathy Billings testified:
Q: Is the person who shot your husband present today in court?
A: Yes, he is.
Q: Would you please point him out?
A: The young man over there in the yellow shirt.
MR. KELLER: Let the records reflect that she has identified Anthony Zolun.
App. 1, excerpt from Zolun trial transcript, at 37.

Similarly, after Kathy had testified in this case that both Nixon and Zolun had guns and were firing, Nixon's attorney, on cross-examination, asked Kathy if she had testified at Zolun's trial that Nixon had no gun. Again, Kathy denied having so testified. Again, the attorney failed to introduce the prior inconsistent testimony. At Zolun's trial, Kathy had testified: "No, I never saw him [Nixon] with a gun." App. 1, Excerpts from Zolun transcript, at 53. There were other inconsistencies, including Kathy's testimony at Nixon's trial that Zolun had the .45 caliber pistol, whereas there was no such testimony at Zolun's trial.

Nixon argues that his attorney's failure to impeach Kathy by introducing the prior inconsistent testimony constituted ineffective assistance of counsel.[6]

■ Whether a criminal defendant's trial counsel was ineffective is a mixed question of law and fact, subject to *de novo* review. *Goodwin v. Balkcom*, 684 F.2d 794, 803 (11th Cir.1982), *cert. denied*, 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983). In order to be entitled to relief, the habeas petitioner must satisfy both prongs of a two-part test. The petitioner must show both that the counsel was ineffective and that the petitioner suffered prejudice as a result. To establish ineffectiveness, the petitioner has the burden of showing that "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The courts will judge the reasonableness of the challenged conduct on the facts of the particular case, viewed as of the time of the conduct. *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989). A tactical decision by counsel will almost never be overturned by habeas corpus. *Sanchez v. United States*, 782 F.2d 928, 935 (11th Cir.1986). To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

■ We have no difficulty concluding that the attorney's actions were not within the wide range of professional competence. Faced with glaring and crucial discrepancies between Kathy Billings' testimony at the two trials, the attorney failed to follow up on his cross-examination by confronting her with her statements or by introducing the transcript. The attorney's failure to follow up on Kathy Billings' testimony sacrificed an opportunity to weaken the star witness's inculpatory testimony. At stake was the crucial identity of the person who shot the victim. At Zolun's trial, Kathy testified that Zolun shot her husband, and that she never saw Nixon with a gun. At Nixon's trial, Kathy testified that Nixon had a gun, was firing,[7] and that Nixon murdered her husband. Not only was Kathy Billings' testimony at Zolun's trial much more favorable to Nixon, Zolun's trial was only a year after the event. Furthermore, her prior inconsistent statement

---

6. Nixon also alleges that his counsel's performance was ineffective for the following reasons: (1) he did not request jury instructions on voluntary manslaughter or self-defense; (2) he was deficient in conducting pre-trial investigation; (3) he did not challenge the voluntariness of Nixon's statement in Canada nor request a *Jackson v. Denno* hearing; (4) he failed to object to questions and cross-examination tending to bring improper character evidence before the jury; (5) he was not acquainted with the scientific evidence presented by the prosecution; and (6) he told Nixon that he considered the case a "freebie" which Nixon would be able to attack on appeal on the ground of ineffectiveness.

Because we conclude that the attorney's failure to impeach Kathy Billings with her prior inconsistent testimony on crucial matters was egregious and prejudicial, we need not decide whether any of the above allegations warrant relief.

7. At Nixon's trial, Kathy Billings testified that both Zolun and Nixon had guns and that both were firing. Moreover, she also testified that before the fight started, Nixon reached behind his back as if reaching for his back pocket. Although this testimony is ambiguous, it suggests that he had a concealed gun; indeed, the testimony was so interpreted by the Georgia Supreme Court in Nixon's direct appeal. There was no such testimony at Zolun's trial.

could have been admitted not merely for impeachment purposes but as substantive evidence. *Gibbons v. State,* 286 S.E.2d 717 (Ga.1982). We perceive no excuse for the failure to impeach Kathy Billings with her previous testimony. *Cf. Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) ("[T]he right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial.").

The state argues that the attorney's actions were the result of a strategic decision to keep Kathy Billings off the stand. At the state habeas hearing, the attorney testified that he did not want to recall Kathy, thus giving her the opportunity to repeat damaging testimony before the jury. While this may well be a strategic decision, the fact that the attorney was forced into such a situation indicates his ineffectiveness. The attorney's need to recall Kathy to confront her with her previous testimony indicates that he did not have the transcript of the Zolun trial at hand or was unfamiliar with its contents.[8] Because Kathy Billings' testimony was crucial, we conclude that professionally competent counsel would have had at hand the transcript or the relevant excerpts and would have been sufficiently prepared to locate her relevant testimony in the previous trial.

Having concluded that the attorney's representation was deficient, we turn to the prejudice prong of the *Strickland* test. Considering the importance of Kathy Billings' testimony and the amount of other evidence in the case, we conclude that there is a reasonable probability that the result would have been different if Kathy Billings had been appropriately impeached.

Kathy Billings was the only eyewitness to the murder to testify at the trial, apart from Nixon himself. She testified that Nixon had a gun and firmly identified him as the murderer. This testimony was inconsistent with her testimony at Zolun's trial that she did not see Nixon with a gun and that Zolun had killed her husband. Other testimony, again inconsistent with her previous testimony, identified the weapon in Zolun's hand as a .45 caliber pistol; Tom Billings was killed with .32 caliber bullets.

In contrast to Kathy Billings' directly inculpatory evidence, the other evidence against Nixon was far from overwhelming. Kathy Billings testified that Nixon and her husband were struggling over something. There was no physical evidence that Nixon fired a pistol, although tests on the victim indicated that Tom Billings had not fired a gun.[9] Neither did the testimony establish that Nixon controlled the murder weapon. Two pistols were discharged, a .45 and a .32. The .32 was the murder weapon. Aside from Kathy Billings' impeachable testimony that Zolun had a .45,[10] the only evidence on the matter was that at least one of the fatal bullets was fired from close range. Kathy testified that Zolun stood in the doorway of the trailer as he fired, while Nixon was actually inside. However, she also testified that the trailer was only five feet wide, and Tom Billings and Nixon were engaged in a fight or

---

**8.** The trial transcript suggests that the attorney did have the transcript at hand. At the close of his cross-examination of Kathy, he stated: "I'd like to hold that witness until I can get my—I've got those transcripts I'd like to re-examine her on." Nixon trial transcript, Ex. 1, at 40. Thus, his ineffectiveness most probably resulted from his lack of familiarity with the Zolun transcript and his inability to turn promptly to the prior inconsistent testimony and confront the witness. However, there was some evidence at the state habeas hearing suggesting that the attorney did not have the Zolun transcripts at hand at the crucial time during the Nixon trial. No factfinding has been made as to this. However, we conclude that such a factfinding is unnecessary; it would be inexcusable not to have the Zolun transcript at hand, or, if it were at hand, it would be inexcusable to be unfamiliar with its content.

**9.** This testimony was contradicted by other testimony to the effect that Billings could have discharged a gun, despite the forensic test results.

**10.** At Zolun's trial, Kathy did not testify that Zolun had the .45 caliber pistol. At Nixon's trial, her testimony that Zolun's gun was a .45 was based on two grounds: that it was big and that it was an automatic. However, a detective later testified that both .32 and .45 caliber pistols are usually automatic.

struggle which surely would have moved them all over that small area.

Considering all the circumstances,[11] we conclude that there is a reasonable probability that the outcome of the trial would have been different if Kathy Billings had been impeached with her previous testimony.

### III. CONCLUSION

In sum, we conclude that Nixon received constitutionally ineffective assistance from his trial counsel. Therefore, the decision of the district court denying relief is

REVERSED.

---

11. There was also testimony by the Canadian police officer that Nixon, referring to the incident, stated that "[Billings] shot at me and I shot at him." However, this statement, on its face or in conjunction with the other evidence, is not so inculpatory as to preclude our finding that there was prejudice. Also, Nixon testified that he had actually said "[Billings] shot at me and he got shot."