[Cite as *State v. Bey*, 2019-Ohio-656.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-17-1043

    Appellee                                 Trial Court No. CR0201602438

v.

Theodore Hampton Bey                   **DECISION AND JUDGMENT**

    Appellant                               Decided:  February 22, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Theodore Hampton Bey, appeals the February 14, 2017 judgment of the Lucas County Court of Common Pleas which, following a jury trial finding him guilty of burglary, sentenced him to seven years of imprisonment.  For the reasons that follow, we affirm.

**{¶ 2}** On August 8, 2016, appellant was indicted on one count of burglary in violation of R.C. 2911.12(A)(2) and (D), a second-degree felony, with a firearm specification under R.C. 2941.145. The charge stemmed from the July 29, 2016 break-in at a residence in Toledo, Lucas County, Ohio. Appellant entered a not guilty plea to the charge.

**{¶ 3}** The case proceeded to a jury trial on December 5, 2016, with a guilty verdict on the burglary charge and specification returned on December 8, 2016. Thereafter, on December 14, 2016, appellant's counsel filed a motion for a new trial asserting juror misconduct. On January 24, 2017, the motion was granted.

**{¶ 4}** A second trial commenced on February 6, 2017. Testimony was presented from law enforcement as to the unfolding of the events on July 29, 2016. The first witness was the 9-1-1 supervisor of call takers and police dispatchers; she was also the records custodian. She testified about the incident detail report which links all related calls and dispatches together and is generated in the ordinary course of business. The supervisor stated that there were four calls received relating to the incident; those were played for the jury. The calls involved the initial call from a neighbor about unusual activity at the home and subsequent calls from persons residing in the neighborhood regarding a suspicious individual.

**{¶ 5}** During cross-examination, the supervisor was questioned about the incident detail report consisting of 35 pages. Specifically, the supervisor was questioned about the discrepancies in the description of the suspect. At the time of the burglary, the

2.

officers described the suspect as wearing a black hoodie and gray sweatpants. In the time between the burglary and appellant's apprehension, between 3:55 a.m. and 6:07 a.m., the suspect was described by two police officers as wearing a white tee shirt and then by civilians as wearing a light long-sleeve grey tee shirt or hoodie. One description included a black hat.

{¶ 6} Following the dispatch call of a suspected burglary in progress, Toledo Police Officer Joseph Petro was the first officer to arrive at the scene on Shelbourne Avenue; Officer Chris Evans arrived immediately thereafter. Officer Petro went around to the right of the house while Evens proceeded to the rear of the house. An additional unit arrived with Officer Danielle Kasprzak joining Petro and Officer Jonathon Chio assisting Officer Evans.

{¶ 7} Officer Petro stated that he could see an individual through the window; he was dismantling a television and had socks on his hands. Petro testified that he then saw a second suspect walking down the stairs to the living room area. Officer Petro indicated that there was lighting on in the house. Petro stated that the outside lighting conditions included moonlight and streetlights at the nearby junction of two streets. Officer Petro further indicated that he regularly worked the midnight shift and that he was accustomed to seeing in the dark.

{¶ 8} Officer Petro testified that appellant abruptly jumped out the side window, head first; Petro was able to grab around his body. According to Officers Petro and Kasprzak, appellant was brandishing a weapon. Petro stated that he released appellant in

3.

order to grab his forearm and gain control of the weapon while pulling him out of the window.

{¶ 9} Officer Petro testified that at some point he released appellant, assuming that he would fall to the ground. Instead, appellant was pulled back into the window; as he was retracting, appellant pointed the gun in his face. Officer Petro stated that the gun was approximately 12 inches from his face and that he was able to identify appellant as the individual wielding the gun. He further described appellant as wearing a black hoodie and gray sweatpants and stated that his hair was in "twisties" or unkempt and disheveled.

{¶ 10} While this transpired, Officer Kasprzak began yelling "gun, gun, gun" into her police radio and had stepped back from the two in order to position herself to shoot the suspect if necessary. Kasprzak stated that she saw the suspect point the weapon at Officer Petro. Officer Kasprzak identified appellant as the individual; as did Petro, she described appellant as wearing gray sweatpants and a dark or black hoodie. Kasprzak stated that appellant had "twistie" or nappy, separated hair.

{¶ 11} After the individual was pulled back into the home, he and the other suspect fled through the front door and the officers gave chase. The other suspect was quickly apprehended. Appellant was apprehended in the area approximately two hours later.

{¶ 12} During the pursuit, officers discovered a loaded magazine that appeared to have been dropped recently (it was neither dirty nor weathered). No gun was ever recovered.

4.

{¶ 13} Toledo Police Detective Terry Cousino, of the scientific investigation unit, testified that he is called to crime scenes in order to collect and document physical evidence. Detective Cousino testified that he heard about the incident on Shelbourne Avenue over the radio and, rather than proceeding to the crime scene, he responded to aid in the foot pursuit of the suspect. Cousino inspected the magazine recovered and could not identify any visual fingerprints; Cousino stated that this was very common. Similarly, Detective Michael Murphy testified that he has inspected hundreds of magazines and guns and had never retrieved a usable fingerprint.

{¶ 14} Detective Murphy further testified that an oddly-parked Chevrolet Impala was observed by officers three houses from the break-in. Officers ran the license plate and found that it did not belong in the neighborhood. They approached the vehicle and discovered an intoxicated individual sleeping in the passenger seat. Detective Murphy testified that their investigation revealed that the woman the vehicle was registered to was the mother of appellant's child. Further, photographs taken from the girlfriend's social media page (upon which she used appellant's last name) showed appellant in what looked like the same vehicle.

{¶ 15} The victim-homeowner testified that he did not give appellant permission to be in his home or to take any of his belongings. The victim also described the electronics in his home and the fact that they had been tampered with.

{¶ 16} Following deliberations, the jury found appellant guilty of burglary; the jurors could not reach a unanimous verdict as to the firearm specification. On

5.

February 14, 2017, appellant was sentenced to seven years of imprisonment. This appeal followed with appellant raising two assignments of error for our review:

> Assignment of Error No. 1): The failure to request a transcript from the previous trial to impeach witnesses, constituted ineffective assistance of counsel.

{¶ 17} Appellant also asserts the following supplemental assignment of error:[1]

> Assignment of Error No. 2): Appellant's conviction for burglary, a felony of the second degree, was against the sufficiency and manifest weight of the evidence.

{¶ 18} Appellant's first assignment of error challenges trial counsel's failure to obtain a transcript of his first trial to use for impeachment of witnesses at the second trial. In general, to establish ineffective assistance of counsel, a criminal defendant must prove two elements: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice under *Strickland v. Washington* requires a showing "that there is a reasonable

---

[1] Following the withdrawal of appellant's initial counsel, this court permitted new counsel to file a supplemental brief.

6.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 19} Further, when considering a claim of ineffective assistance of counsel, a court must be "highly deferential" to trial counsel and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner. *State v. Hamblin*, 37 Ohio St.3d 153, 155-56, 524 N.E.2d 476 (1988).

{¶ 20} Arguing that appellant's counsel was ineffective by failing to obtain the first trial transcript, appellant asserts that there were several inconsistencies in Officer Danielle Kasprzak's testimony between the first and second trials that should have been challenged. In particular, appellant notes that at the first trial Officer Kasprzak indicated that upon arrival at the burglary in progress she could not see the individuals in the house because she was blocked by Officer Petro. At the second trial, the officer testified:

> Q: What if anything were you able to see when looking through that window?
>
> A: I saw one of the suspects inside the window that was fiddling with a TV or something up against the wall. * * *. And he was kind of over that way fiddling with something. He's really the only person I could see.

7.

**{¶ 21}** Further, during her testimony at the first trial, Officer Kasprzak testified:

A: As he comes out the window, Officer Petro grabs him. I see a gun. * * *. I see the suspect pull the gun up to Joe Petro's face, and I thought he was going to shoot Joe Petro in the face. I take the three steps to get in a position to where I could shoot him, and he's gone.

* * *

Q: Did you see where he went?

A: Not -- not really. I mean I knew he didn't end up – because I was expecting him to be rolling out of the window because of how far out the window he had gotten by the time I took the steps to get Joe out of my way kind of, if that makes sense.

And by the time I did that and I turned around he was gone, and in that moment I realized he got pulled back in the house by what happened, what transpired. I didn't actually see what happened because it was really fast.

**{¶ 22}** At the second trial, Officer Kasprzak stated that she observed the gun going higher until it was pointed at Officer Petro's face. Kasprzak states that the suspect was being "sucked back into the house." She stated that she was able to see the suspect's face. Officer Kasprzak stressed that the events happened very quickly.

**{¶ 23}** Finally, appellant contends that Officer Michael Watson's testimony differed between the two trials; specifically, as to whether the officers' description of

8.

appellant and the varying descriptions by 9-1-1 callers precluded the possibility that the suspect had successfully altered his appearance and no longer fit the clothing description. In the second trial, Watson indicated negatively stating that the officers had conclusively identified the suspect based on their initial encounter with him at the burglary site. When questioned about prior "hearing" testimony, Watson indicated that he misunderstood the question at that time.

{¶ 24} Supporting his argument that counsel was ineffective by failing to impeach the witnesses with their former trial testimony, appellant relies on a federal habeas corpus case captioned *Nixon v. Newsome*, 888 F.2d 112 (11th Cir.1989). In *Nixon*, the defendant was convicted of murder. At his trial, the only eyewitness testified that she saw the defendant shoot and kill her husband. *Id.* at 114. Previously, at a trial involving another individual, Zolun, who was also charged in the murder, the same eyewitness testified that she saw Zolun kill her husband. *Id.* at 113. The court concluded that in light of the "glaring and crucial discrepancies" in her testimony, counsel's failure to confront the witness on cross-examination "with her statements or by introducing the transcript" was constitutionally deficient. *Id.* at 115.

{¶ 25} In the present case, we first note that appellant was represented by the same counsel for both trials. As to Officer Kasprzak's testimony, the only clear discrepancy was her ability to see individuals in the house. As to the struggle outside the window, at both trials Officer Kasprzak testified that she observed appellant point a gun at Officer Petro's face. Whether she saw the suspect being pulled back into the house does not

9.

affect her testimony that she saw appellant point a gun in Officer Petro's face. Further, in the second trial Kasprzak stressed that the events happened very quickly.

{¶ 26} Reviewing the first and second trial transcripts and the relevant law, we conclude that any inconsistencies were trivial in nature and did not impact the outcome of the trial. Thus, appellant's counsel was not constitutionally ineffective and appellant's first assignment of error is not well-taken.

{¶ 27} In his second assignment of error, appellant argues that his burglary conviction was not supported by sufficient evidence and was against the weight of the evidence. Appellant's argument centers on identification testimony by the officers involved, and the 9-1-1 calls from area residents and corroborative evidence.

{¶ 28} Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency of the evidence is purely a question of law. *Id.* Under this standard of adequacy, a court must consider whether the evidence was sufficient to support the conviction, as a matter of law. *Id.* The proper analysis is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

10.

**{¶ 29}** Appellant was convicted of burglary, R.C. 2911.12(A)(2) and (D) which provides:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> * * *
>
> (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;
>
> * * *
>
> (D) Whoever violates division (A) of this section is guilty of burglary. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.

**{¶ 30}** Appellant also argues that the conviction was against the weight of the evidence. Unlike a sufficiency of the evidence analysis, in determining whether a conviction is against the weight of the evidence a court of appeals sits as a "thirteenth juror," and:

> 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in

resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 31} Appellant's arguments under the above review standards similarly challenge the evidence purporting to identify him as the burglar. Appellant challenges his identification based on the officers' opportunity to see his face, discrepancies in his clothing description, and the lack of corroborative evidence.

{¶ 32} As to the testimony presented regarding facial identification, appellant first contends that there was no evidence regarding any lighting sources enabling Officer Petro to observe appellant. The testimony at trial belies this contention. As set forth above, Petro specifically stated that there was a light on in the house and there were streetlights and moonlight and that he was accustomed to working in the dark. Officer Kasprzak similarly testified that "it was lit up pretty well" by a bright streetlight at the T-intersection of two streets.

{¶ 33} Appellant also contends that the officers' facial identification was not credible because they failed to specifically indicate in the report that they saw the suspect's face and that the officers failed to mention his facial tattoo. Appellant further argues that the testimony presented at trial was that appellant dove out of the window,

12.

face down, with a hoodie covering his head. At trial, Officers Petro and Kasprzak testified that they clearly saw appellant's face during the incident and they were cross-examined about the contents, or lack thereof, of the police report.

{¶ 34} Appellant further argues that the fact that appellant was described as wearing a black hoodie and grey sweatpants and that appellant was arrested wearing a black hoodie and sweatpants was insufficient to support his burglary conviction because the clothing was "generic." Appellant bolsters this argument with the fact that the 9-1-1 calls in the intervening period between the burglary and appellant's arrest offered varying descriptions of an individual roaming the neighborhood. Two officers also described him as wearing a white tee shirt. These discrepancies were thoroughly vetted at trial.

{¶ 35} Finally, appellant argues that the lack of corroborating evidence, specifically fingerprint evidence, weighs against appellant's conviction. As set forth above, suspect one was observed dismantling a television set with socks on his hands; appellant was apprehended with a sock in his pocket. Further, Detectives Cousino and Murphy testified that it is rare to find usable fingerprints on either a magazine or a gun. Finally, appellant's girlfriend's vehicle, registered to an address not in the neighborhood of the burglary, was found three doors down. Further, there was no explanation for why the vehicle or appellant were in the neighborhood during the events.

{¶ 36} Reviewing the evidence presented at trial we find that a reasonable juror could have found appellant guilty of burglary. Further, analyzing appellant's arguments under the manifest weight of the evidence standard, we cannot say that the jury clearly

13.

lost its way in finding appellant guilty of burglary. This case centered heavily on the identification testimony of Officers Petro and Kasprzak; they were clear in identifying appellant as the perpetrator. Any conflicting testimony went to the weight of the evidence and we cannot conclude that the jury lost its way in its resolution of such conflicts.

{¶ 37} Based on the foregoing, we find that appellant's burglary conviction was supported by sufficient evidence and was not against the weight of the evidence. Appellant's second assignment of error is not well-taken.

{¶ 38} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                   JUDGE
Thomas J. Osowik, J.           

Christine E. Mayle, P.J.       _____
CONCUR.                                    JUDGE

_____
                                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.