[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12145

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WAYNE MATTHEW ELLIOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cr-00278-LMM-JSA-4

_____

Before GRANT, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

Wayne Matthew Elliott appeals the District Court's order denying his post-trial motion for a judgment of acquittal or, in the alternative, motion for a new trial, alleging improper venue and insufficient evidence. Elliott argues that the Government failed to prove (1) that the crime of conviction occurred in the Northern District of Georgia and (2) that Elliott took a substantial step to further the crime of attempted possession of methamphetamine. Alternatively, Elliott argues that if we find his venue argument waived, we should hold that his trial counsel was ineffective for failing to timely raise the issue at the close of the Government's case during the trial. For the reasons discussed below, we affirm.

## I.

In July 2019, a grand jury in the Northern District of Georgia returned a four-count indictment against Elliott and three codefendants. Only two of those counts—Counts One and Three—involved Elliott. Count One charged Elliott with conspiracy to possess with intent to distribute at least 500 grams of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 846. Count Three charged Elliott with attempted possession with intent to distribute methamphetamine, also in violation of 21 U.S.C. § 846.

Before trial, Elliott requested a jury instruction on attempted possession of methamphetamine, a lesser-included

offense to Count Three.  The case proceeded to trial, and the Government showed the following—mostly through the testimony of Kyle Lawrence, an investigator with the Catawba County Sherriff's Office, and Justin Clutter, a Special Agent with the Drug Enforcement Agency ("DEA").

On June 1, 2019, DEA agents learned that Kevin Brown— one of Elliott's codefendants—acquired methamphetamine in Atlanta, Georgia, and planned to deliver some to Elliott in Marion, North Carolina.  Elliott knew Brown well and coordinated this transaction with him.

After Brown picked up the drugs, agents intercepted text messages between him and Elliott.  Brown texted Elliott earlier that afternoon, "Just picked up the fruit," to which Elliott replied, "Come on."  "All the way to Marion?" Brown asked.  And with no reply from Elliott for three hours, Brown sent another, "I'll see you in the A.M., better be up waiting."  Presumably, Brown had intended to deliver the drugs to Elliott's residence in Marion, as Elliott had texted his address to Brown just two days earlier.

At any rate, Brown did not complete the planned delivery to Elliott.  DEA agents coordinated a traffic stop and pulled Brown over in the Northern District of Georgia.  The agents found two kilograms of methamphetamine concealed in the tailgate of Brown's truck.  At about that time, Elliott replied to Brown's earlier texts, "Where or were I come to you or something, loosing [sic] a lot of $$$$$$$$."  And one minute later, evidently becoming impatient, Elliott sent another: "It is the A.M [sic]."

4                    Opinion of the Court                    22-12145

With Brown in custody, DEA agents and law enforcement officers went to Elliott's residence in Marion and spoke with him. In their discussions, Elliott admitted that Brown visited Elliott "religiously" and that Brown was supposed to be on his way to Elliott's that night. Elliott also admitted that Brown charged "ten eight"[1] for delivering a kilogram of methamphetamine[2] and that he had cash ready to pay back a $5,000 debt he owed to Brown.[3]

Elliott gave varying stories of his cash's location. At first, Elliott told law enforcement his money was in the woods nearly a mile away, but later said it was in his kitchen in the oven or stove. Upon searching Elliott's kitchen, agents found a bag with $29,420 in cash in the oven drawer. Officer Lawrence testified that this cash was sufficient for Elliott to buy the two kilograms of methamphetamine in Brown's truck ($21,600) and to pay off the $5,000 debt that Elliott owed to Brown.

Other notable events occurred during law enforcement's discussions with Elliott. Without the officers telling Elliott where they had found Brown's methamphetamine, Elliott pinpointed that

---

[1] Officer Lawrence testified that he understood "ten eight" to mean "$10,800" based on the price of methamphetamine and the amount of cash that Elliott had on hand.

[2] Elliott also explained that if he went to Atlanta to pick up the methamphetamine, then the purchase price decreased to "ten." Special Agent Martin understood this to mean "$10,000."

[3] Initially, Elliott stated that he would receive Brown's methamphetamine "on front." That is, Elliott would first sell the methamphetamine before paying Brown.

the drugs would be in the tailgate of Brown's truck. Additionally, Elliott consented to a search of his phone, which allowed the agents to confirm that Elliott's phone was the one they had intercepted and that Elliott had been the one communicating with Brown.

At the close of the trial evidence, Elliott made an oral motion for a judgment of acquittal as to the conspiracy count.[4] The District Court denied this motion. On March 30, 2022, the jury found Elliott guilty of attempted possession of methamphetamine, the lesser-included offense to Count Three, and acquitted him of the other charges.

Seven days later, Elliott filed a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c) or, in the alternative, a new trial under Rule 33(a). This motion was the first time that Elliott challenged the venue of his trial. After reviewing the trial transcript, Elliott asked the District Court to allow him to amend and supplement this motion. That request was granted.[5]

Meanwhile, the District Court sentenced Elliott to one year of imprisonment and three months of supervised release.[6] Elliott

---

[4] Elliott argued that he was not part of any conspiracy but was instead part of a buyer-seller relationship.

[5] The District Court also granted Elliott's trial counsel's motion to withdraw as counsel, referred the matter to a magistrate judge for appointment of new counsel, and gave Elliott's new counsel 30 days to perfect his motion for a judgment of acquittal.

[6] Elliott has completed his term of imprisonment and his term of supervised release.

timely appealed the District Court's judgment.  This Court rescinded the briefing schedule and stayed the appeal pending resolution of Elliott's motion for a judgment of acquittal or a new trial.

In the perfected motion, Elliott again moved for a judgment of acquittal of the lesser-included offense of attempted possession under Rule 29(c) or, in the alternative, for a new trial under Rule 33(a).  Elliott argued that the Government neither proved that venue was proper in the Northern District of Georgia nor that Elliott took a substantial step to further the crime of attempted possession.

The District Court denied that motion.[7]  The Court found that (1) Elliott had waived his venue challenge by waiting to raise it until seven days after the jury rendered its verdict and (2) a reasonable jury could have found Elliott guilty beyond a reasonable doubt.

On appeal, Elliott argues that the District Court erred in finding that he waived his challenge to venue and that there was sufficient evidence to sustain his conviction.  Should we find venue waived, Elliott argues that his trial counsel was ineffective for failing to raise the issue at the close of evidence.  We address each argument in turn.

---

[7] After the District Court denied Elliott's perfected motion for a judgment of acquittal, we issued a new briefing schedule in Elliott's appeal.

## II.

The first issue we address is whether the Government established venue in the Northern District of Georgia. We review *de novo* a determination that the government established venue, viewing the "evidence related to venue in the light most favorable to the government and mak[ing] all reasonable inferences and credibility determinations in favor of the verdict the jury returned." *United States v. Smith*, 22 F.4th 1236, 1242 (11th Cir. 2022).

Elliott challenges the placement of venue, alleging that all the essential acts of his crimes took place in North Carolina. Elliott alleges that he did not possess or attempt to possess a controlled substance, but if he had, it would have been in North Carolina, not the Northern District of Georgia.

The Government counters that Elliott waived appellate review of his venue claim because he did not object to it until after the jury rendered its verdict. The Government also contends that it established venue with the evidence showing that Elliott shared criminal intent with his codefendant Brown to possess controlled substances in the Northern District of Georgia. Finally, the Government argues that to the extent that venue was improper in the Northern District of Georgia for the lesser-included offense of attempted possession of a controlled substance, Elliott may not appeal that error as he requested the jury instruction on the lesser-included offense.

Under the Sixth Amendment, defendants have a right to be tried in the district where they committed their crimes. *See United*

*States v. Little*, 864 F.3d 1283, 1287 (11th Cir. 2017). But that right is not absolute and "it will be deemed waived unless asserted prior to trial." *United States v. White*, 590 F.3d 1210, 1213 (11th Cir. 2009). Federal Rule of Criminal Procedure 12(b)(3)(A)(i) requires a defendant to raise a claim of improper venue by pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." In *United States v. Dabbs*, we noted a limited exception to this waiver rule: if an indictment alleges an incorrect venue, but the defendant is unaware of the error until the prosecution presents its case, an objection to venue made at the close of the evidence is timely. *See* 134 F.3d 1071, 1078 n.8 (11th Cir. 1998).

Elliott waived the issue of venue by waiting to challenge it until seven days after the jury rendered its verdict. Additionally, Elliott neither raises a *Dabbs* issue in his initial brief nor argues that the indictment contained a venue defect not apparent on its face. But even if he had, Elliott's venue challenge was raised seven days *after* the limited exception that *Dabbs* allows for. Thus, Elliott has waived venue. As a result, we do not inquire into the substance of Elliott's claim that the Government failed to prove venue was proper in the Northern District of Georgia.

### III.

Elliott also argues that the District Court erred in finding that there was sufficient evidence to support Elliott's conviction for attempted possession of a controlled substance. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light

most favorable to the government and making all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Robertson*, 493 F.3d 1322, 1329 (11th Cir. 2007).

In a ruling on a motion for a judgment of acquittal, a court must determine "whether there is substantial evidence from which a jury could reasonably find the defendant[] guilty beyond a reasonable doubt." *United States v. Gregory*, 730 F.2d 692, 706 (11th Cir. 1984). The evidence does not have to exclude every reasonable hypothesis of innocence or be entirely inconsistent with every conclusion except that of guilt, "provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Robertson*, 493 F.3d at 1329 (quoting *United States v. Tinoco*, 304 F.3d 1088, 1122 (11th Cir. 2002).

On the other hand, we review the disposition of a motion for a new trial for an abuse of discretion. *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). "The decision to grant or deny a new trial motion based on the weight of the evidence is within the sound discretion of the trial court." *Id.* Motions for new trials based on the weight of the evidence are disfavored and courts are to grant them sparingly. *Id.* at 1313. They are granted only in those exceptional cases in which the evidence preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. *Id.* at 1312–13.

The elements of attempted possession of a controlled substance are (1) that the defendant knowingly intended to commit the crime of possession of a controlled substance, and (2) that the

defendant's intent was strongly corroborated by his taking a substantial step toward committing the crime. *Cf. United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001) (describing elements of attempted possession with intent to distribute); *see also* 21 U.S.C. § 844. "A 'substantial step' is an important action leading up to committing of an offense – not just an inconsequential act. It must be more than simply preparing. It must be an act that would normally result in committing the offense." 11th Cir. Pattern Jury Instructions, S11 (Mar. 2022).

The District Court did not err in denying Elliott's motion for a judgment of acquittal or abuse its discretion by denying his motion for a new trial because the jury had sufficient evidence to support Elliott's conviction for attempted possession of methamphetamine. Officer Lawrence testified that Elliott admitted that he and Brown had an established relationship for drug deals, that Brown was supposed to be on his way to North Carolina and had drugs in his truck's tailgate, and that he had cash in his oven to pay Brown. Law enforcement found $29,420 in cash in Elliott's oven. Officer Lawrence believed this was sufficient for Elliott to buy Brown's two kilograms of methamphetamine and to pay off a $5,000 drug debt that Elliott admittedly owed Brown.

Additionally, while Elliott argues that the evidence does not suggest that a drug transaction was imminent, text messages between Elliott and Brown show otherwise. Shortly after picking up the drugs, Brown texted Elliott "Just picked up the fruit," and Elliott replied, "Come on." Brown then asked about delivering the

drugs to Elliott in Marion and confirmed this plan by texting, "I'll see you in the A.M., better be up waiting." When Brown did not arrive in the "A.M."—because law enforcement stopped his vehicle—Elliott texted, "Where or were I come to you or something, loosing [sic] a lot of $$$$$$$$" and "It is the A.M [sic]."

Elliott offers other interpretations of the evidence, but a jury verdict will not be overturned so long as there is *any* reasonable construction of the evidence that would have allowed the jury to find the defendant guilty beyond a reasonable doubt. *See United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015). Based on the evidence presented at trial, we cannot agree that there is *no* reasonable construction of the evidence that could support a guilty verdict. Elliott agreed with Brown on the deal's terms, directly and repeatedly urged Brown to bring the drugs to him, and readied cash for the transaction. The jury could construe this evidence as supporting Elliott's guilt beyond a reasonable doubt. Therefore, because there was substantial evidence from which a reasonable jury could convict Elliott, the District Court did not err when it denied Elliott's motion for a judgment of acquittal. Additionally, because the evidence does not preponderate heavily against the verdict and no miscarriage of justice would occur by letting the verdict stand, the District Court did not abuse its discretion by denying Elliott's motion for a new trial.

## IV.

Elliott also raises on direct appeal a claim of ineffective assistance of counsel for his trial counsel's failure to timely object to

venue. "Whether a criminal defendant's trial counsel was ineffective is a mixed question of law and fact, subject to *de novo* review." *Nixon v. Newsome*, 888 F.2d 112, 115 (11th Cir. 1989).

This Court generally will not consider an ineffective-assistance-of-counsel claim raised on direct appeal where the district court neither entertained the claim nor developed a record. *Id.* Even if the record contains some indication of deficiencies in counsel's performance, a 28 U.S.C. § 2225 motion is the preferred means for deciding an ineffective assistance claim. *United States v. Patterson*, 595 F.3d 1324, 1328–29 (11th Cir. 2010). That said, we will consider the claim on direct appeal where the record is sufficiently developed. *See Bender*, 290 F.3d at 1284.

After reviewing the record and reading the parties' briefs, we conclude that the record is not sufficiently developed to consider whether Elliott's counsel was ineffective. Elliott did not raise a claim of ineffective assistance of counsel below, so the District Court did not develop any record. For these reasons, we decline to consider Elliott's ineffective-assistance-of-counsel claim on direct appeal so that he can raise it in a § 2225 motion. Accordingly, the District Court's judgment is

**AFFIRMED.**